IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DAN HEINE** and **DIANA YATES**, <br><br> Defendants. | Case No. 3:15-cr-00238-SI <br><br> **OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE** |

Billy J. Williams, United States Attorney, and Claire M. Fay and Michelle Holman Kerin, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the United States of America.

Caroline Harris Crowne, TONKON TORP, LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Portland, OR 97204; Jeffrey Alberts, PRYOR CASHMAN, LLP, 7 Times Square, New York, NY 10036. Of Attorneys for Defendant Dan Heine.

Janet Lee Hoffman and Andrew Weiner, JANET HOFFMAN & ASSOCIATES, LLC, 1000 S.W. Broadway, Suite 1500, Portland OR 97205. Of Attorneys for Defendant Diana Yates.

**Michael H. Simon, District Judge.**

      Defendants Dan Heine ("Heine") and Diana Yates ("Yates") are charged in this criminal action with conspiracy to commit bank fraud and making false bank entries, reports, and transactions during the time that they were affiliated with The Bank of Oswego (the "Bank"). A fifteen-day joint jury trial is set to begin on November 1, 2016. Before the Court are Heine and

PAGE 1 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

Yates's separate motions for severance, pursuant to Fed. R. Crim. P. ("Rule") 14(a). Dkt. 109 (Heine's Motion for Severance); Dkt. 110 (Yates's Motion for Severance). For the reasons that follow, both motions are denied.

## STANDARDS

Rule 8(b) provides that two or more defendants may be charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Defendants charged together "'are, *prima facie*, to be jointly tried.'" *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991) (quoting *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980)). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)); *see also United States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)) (stating that joint trials "'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial'"). Thus, "[i]t is well-established that in the federal system there is a preference for joint trials where defendants have been jointly indicted." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008) (citing *Zafiro*, 506 U.S. at 537).

The Federal Rules of Criminal Procedure, however, also recognize that proper joinder under Rule 8(b) may result in prejudice to either the government or a defendant. Thus, Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials . . . ." It is within the district court's discretion to determine the risk of prejudice posed by a joint trial. *Zafiro*, 506 U.S. at 541.

PAGE 2 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

Importantly, Rule 14(a) does not require severance even if a defendant or the government demonstrates that they would be prejudiced by a joint trial; rather, Rule 14(a) "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39. Severance is warranted only when "joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976). The Ninth Circuit notes that joints trials are "particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

The Supreme Court adds that severance should not be granted unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Such trial rights include the ability to present an individual defense and the Sixth Amendment right to confront one's accusers. *See United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.

The Ninth Circuit provides a four-part test to aid a district court's determination of whether severance is appropriate. The relevant considerations are:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant;
>
> (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used;
>
> (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and

PAGE 3 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

> (4) whether [the defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Hernandez-Orellana*, 539 F.3d at 1001 (quoting *United States v. Sullivan*, 522 F.3d 967, 981 n.9 (9th Cir. 2008)). "The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury." *Sullivan*, 522 F.3d at 981-82. "The prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." *Escalante*, 637 F.2d at 1201. As a general proposition, "juries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 540 (quoting *Richardson*, 481 U.S. at 211).

## BACKGROUND

In 2004, Heine and Yates co-founded the Bank, a financial institution engaged in the business of personal and commercial banking and lending. The Bank is headquartered in Lake Oswego, Oregon. Heine served as the Bank's President and Chief Executive Officer. As President and Chief Executive Officer, Heine was responsible for overseeing the Bank's affairs and managing the Bank's day-to-day operations. Heine was also a member of the Bank's Board of Directors (the "Board"). Heine left the Bank in 2014. Yates, a certified public accountant, served as the Bank's Executive Vice President and Chief Financial Officer. As Chief Financial Officer, Yates was responsible for ensuring the Bank's compliance with state and federal regulations. Yates was also the Secretary of the Board. She resigned from the Bank in March 2012.

Both Heine and Yates were responsible for ensuring that the Bank operated in a sound and safe manner and for keeping the Board informed about the Bank's financial condition and the adequacy of the Bank's policies, procedures, and internal controls. Additionally, Heine and

Yates were members of the Bank's Internal Loan Committee (the "ILC"). The duties of the ILC included approving loans that were outside the authority of individual Bank loan officers, ensuring the quality of the Bank's loan portfolio, and minimizing risks in the Bank's loan portfolio.

On June 24, 2015, a federal grand jury issued a twenty-seven count indictment (the "Indictment") against both Heine and Yates for conduct related to their time with the Bank. The Indictment charges Heine and Yates with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and twenty-six counts of making false bank entries, reports, and transactions, in violation of 18 U.S.C. § 1005. The Indictment alleges that beginning in about September 2009 and continuing through at least September 2014, Heine and Yates conspired to defraud the Bank by means of materially false representations and promises. The Indictment further alleges that the purpose of the conspiracy was to conceal the true financial condition of the Bank from the Board, the Bank's shareholders, regulators, and the public. According to the Indictment, Heine and Yates reported false and misleading information about loan performance, concealed information about the status of foreclosed properties, made unauthorized transfers of Bank proceeds, and failed to disclose material facts about loans to the Board, shareholders, and regulators, all in an effort to conceal the Bank's financial condition.

The Indictment also names Geoffrey Walsh ("Walsh") as a person who played a role in the alleged conspiracy. Walsh was the former Senior Vice President of Lending at the Bank. Yates was Walsh's manager. In May 2012, Heine terminated Walsh for cause, in part based on Walsh's misconduct concerning lending practices. Walsh was indicted and charged in a separate case, *United States v. Walsh*, 3:13-cr-00332-SI-1 (D. Or. 2013), for conspiracy to commit wire fraud, wire fraud, and conspiracy to make false entries in bank records, among other charges. On

July 22, 2015, Walsh pleaded guilty to certain charges alleged in a superseding indictment and a second superseding information. In Walsh's plea agreement, he accepted responsibility for acts related to those described in the Indictment against Heine and Yates. Walsh is currently awaiting sentencing.

The Indictment describes five schemes that purportedly advanced the alleged conspiracy's purpose of creating a healthier appearance of the Bank's finances than actually existed:

1. <u>Payments Made on Delinquent Loans</u>. The Indictment alleges that Heine and Yates made payments, using Bank proceeds, on behalf of Bank customers who were delinquent on their loans. The payments were sometimes made without the knowledge or consent of the Bank customer. The payments were made so that the delinquent loans would not appear in the "Call Reports."[1] Between approximately September 2009 and May 2012, Heine and Yates directed Walsh to make payments from his personal banking account to the accounts of Bank customers who were delinquent on their loans. On March 31, 2011, Yates transferred funds from a Bank customer's business checking account to the customer's personal loan account, which was delinquent, without the customer's consent. Heine and Yates's alleged practice of paying delinquent loans with Bank or other proceeds hid delinquent loans that would have otherwise been included in the "Call Reports" and reported to the Board.

2. <u>Wire Transfer and Loan to Bank Customer M.K.</u> The Indictment alleges that between July 2010 and September 2010, Heine and Yates "permitted an unsecured draw for Bank customer M.K. to be made and then approved a $1.7 million loan for the benefit of M.K. in order to conceal the unsecured draw and to pay other Bank borrowers' delinquent loans." Dkt. 1 at 5. Yates approved the $675,000 unsecured draw.

3. <u>Straw Buyer Purchase</u>. The Indictment alleges that from October 2010 through May 2011, Heine and Yates recruited a Bank employee, D.W., "to facilitate a straw buyer purchase of real property located at 952 A Avenue, Lake Oswego, Oregon 97034" (the "A Avenue Property") with the purpose of concealing a loss to the Bank. Dkt. 1 at 7. Heine and Yates gave D.W. two checks totaling

---

[1] Federal regulations required the Bank to file with the Federal Deposit Insurance Corporation ("FDIC") on a quarterly basis what are commonly known as "Call Reports." "Call Reports" contain data about the Bank's financial position and are divided into a number of schedules. One of the schedules, "Schedule RC-N," requires disclosure of the full value of outstanding loans.

PAGE 6 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

$267,727.89 from the Bank's cash account to purchase the A Avenue Property. The indictment alleges that Yates falsely represented in transactional documents that D.W. funded the purchase personally.

4. <u>Other Real Estate Owned ("OREO") Properties Sold to Bank Customer R.C.</u> The Indictment alleges that from March 2010 through June 2013, Heine and Yates removed two properties from the Bank's OREO account after the properties were sold to a Bank borrower, R.C., "even though the sales did not meet the requirements to remove the properties from the account." Dkt. 1 at 9. Heine and Yates did not require R.C. to make any down payment and provided R.C. with full financing from the Bank for both properties. As a result of the transactions, the properties were no longer reported on the "Call Reports" as OREO assets. On January 24, 2011, FDIC examiners questioned the validity of the removal of the properties from the Bank's OREO account and advised Heine and Yates that the purchases did not meet the minimum equity requirements needed to remove the properties. Yates advised the FDIC examiners that R.C. was going to make down payments for the two homes, which would then permit the Bank properly to remove the properties from the OREO account. On January 31, 2011, Yates prepared two memos to each of the R.C. loan files that falsely stated R.C. was willing to make a 15 percent down payment on the properties. Heine and Yates represented that R.C. paid down payments for the properties, when in fact no payment was received by the Bank.

5. <u>Misrepresentation to Shareholders</u>. The Indictment alleges that from September 2009 through September 2014, Heine and Yates caused the Bank to misrepresent to the Bank's shareholders the Bank's Texas Ratio, which is a measure of the Bank's credit troubles, thus misrepresenting the true extent of delinquent loans.

The Indictment further alleges that Heine and Yates knowingly made twenty-six false entries in the books, reports, and statements of the Bank with the intent to injure and defraud the Bank. According to the Indictment, Heine and Yates did so by omitting material information about the true status of loans and assets from the "Call Reports" and reports to the Board.

## DISCUSSION

### A. Heine's Motion for Severance[2]

Heine argues that his trial should be severed from the trial of his codefendant Yates for three reasons: (1) a joint trial will infringe on Heine's right to present an individual defense to the jury; (2) Yates's admissions will violate Heine's Confrontation Clause rights in a joint trial; and (3) Heine will be severely prejudiced by the mutually antagonistic defenses that he and Yates will present at a joint trial.[3] Each argument is addressed in turn.

#### 1. Individual Defense

The opportunity to present an individual defense is a substantive trial right. *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991) (citing *Escalante*, 637 F.2d at 1201). Heine

---

[2] Although Heine's memorandum in support of his Motion for Severance was publicly filed (Dkt. 109), Heine moved the Court to review *ex parte* the Declaration of Jeffrey Alberts, Heine's lead counsel (the "Alberts Declaration"), including all exhibits attached thereto in support of Heine's Motion for Severance. The Court granted Heine's motion to file under seal the *ex parte* Alberts Declaration and its exhibits. Heine then filed *ex parte* and under seal the Alberts Declaration and 209 pages of attached exhibits. Dkt. 113. The government moved for reconsideration of the Court's Order that allowed Heine to file the Alberts Declaration and its exhibits *ex parte* and under seal, arguing that the government needed access to those materials to respond to Heine's motion for severance. The Court granted in part the government's motion for reconsideration and directed Heine to provide to the government with a copy of the Alberts Declaration and its exhibits and directed both Heine and the government to confirm that all of the exhibits attached to the Alberts Declaration already have been provided to Yates either in discovery or otherwise. Yates, however, objected that she did not have access to the Alberts Declaration and its exhibits. The Court only considered the Alberts Declaration and its exhibits in connection with Heine's Motion for Severance and did not consider the Alberts Declaration or its exhibits in deciding Yates's Motion for Severance. Further, to eliminate or reduce any prejudice to Yates, the Court, upon the conclusion of the oral argument on Heine's motion for severance, ordered the government to return to Heine (or to destroy) all copies in the possession of the government of the Alberts Declaration and its attached exhibits, as well as any notes from or summaries of those documents. Dkt. 175.

[3] Heine cites to an unpublished opinion from this District, *United States v. Stringer*, Case No. 3:03-cr-00432-HA (D. Or. Jan. 9, 2006) (Dkt. 437), in support of his first and third arguments. The Court has reviewed *United States v. Stringer* and finds it factually distinguishable from the case at hand.

PAGE 8 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

argues that a joint trial will improperly prejudice his ability to present an individual defense because much of the evidence that he intends to present at trial risks exclusion as unfairly prejudicial to Yates. A district court must determine, "'before admitting other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under [Fed. R. Evid.] 403.'" *United States v. McElmurry*, 776 F.3d 1061, 1068 (9th Cir. 2015) (quoting *United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) (en banc)). Fed. R. Evid. 403 permits the district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

Heine asserts that the evidence that he intends to present includes: (1) evidence of Yates's bad acts outside the scope of the Indictment, including the results of both an FDIC investigation and an internal Bank investigation into allegations of Yates's misconduct while she served as a Bank executive; (2) Yates's personal relationship with Walsh; and (3) Yates's personal issues, including her overextended personal finances. Heine argues that this evidence is highly relevant to his defense theory that Yates acted alone, or at times jointly with Walsh, with regard to the misconduct alleged in the Indictment. In other words, Heine argues that the evidence he intends to present will show Yates's *modus operandi* to engage in wrongdoing, often in concert with Walsh, but without involving or informing Heine.

In *Zafiro*, the Supreme Court cautioned that severance may be warranted "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." 506 U.S. at 539. "Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* In *Grisby v. Blodgett*, 130 F.3d 365 (9th Cir. 1997), the Ninth Circuit considered whether evidence was "essential[ly] exculpatory."

PAGE 9 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

In *Grisby*, the defendant was convicted at a joint trial of aggravated murder and assault. *Id.* at 367. In his petition for a writ of habeas corpus, the defendant argued that his joint trial prevented him from presenting "essential exculpatory evidence," because if he had been tried individually he would have been allowed to introduce a third-party statement that incriminated his codefendant. *Id.* at 370. The trial court excluded this statement at the joint trial. *Id.* The Ninth Circuit held that the excluded testimony was not clearly exculpatory, because it merely confirmed that the codefendant "initiated the shooting and shot each victim." *Id.* Thus, the statement "has no substantial bearing on the critical question of [the defendant's] participation in the murders." *Id.*

The Court finds here that Heine has not made a showing that "*essential* exculpatory evidence" will be excluded in a joint trial. *See Zafiro*, 506 U.S. at 539 (emphasis added). The evidence that Heine asserts he will seek to introduce—instances of Yates's bad acts outside the scope of the Indictment, Yates's relationship with Walsh, and Yates's personal issues—does not substantially bear on Heine's innocence or guilt with regard to the conspiracy and false bank entries charges. Thus, even if this evidence were to be excluded from a joint trial as unfairly prejudicial to Yates, the evidence is tangential to the "critical question" of Heine's participation in the crimes alleged in the Indictment.[4] *See Grisby*, 130 F.3d at 370. If this evidence were to be excluded, Heine appropriately may still present his theory that Yates engaged in wrongdoing alone or in concert with Walsh, but without Heine's knowledge or assistance. Thus, there is no serious risk that a joint trial would compromise Heine's right to present an individual defense, and severance is not warranted on this basis. *See Zafiro*, 506 U.S. at 539.

---

[4] The Court expressly states that it is not at this time making any rulings on the admissibility of evidence at trial.

## 2. Confrontation Clause

Heine also argues that severance is required because certain admissions made by Yates, if received in evidence in a joint trial, will violate Heine's constitutional rights under the Confrontation Clause. Under *Bruton v. United States* and its progeny, "'the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, or powerfully implicates the defendant.'" *Hernandez-Orellana*, 539 F.3d at 1001 (quoting *United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007)). A statement does not facially incriminate a codefendant unless it has "a sufficiently 'devastating' or 'powerful' inculpatory impact." *United States v. Olano*, 62 F.3d 1180, 1195 (9th Cir. 1995).

In support of his argument, Heine identifies one statement that Yates made to government investigators. Yates's statement refers to events that occurred at a dinner involving Yates, Heine, and Walsh. Heine asserts that Yates's statement implicates both herself and Heine. The government responds that it will not seek to admit the statement that Heine describes. The government asserts that it will not introduce those portions of Yates's statement that may facially incriminate Heine. In addition, the Court finds that to the extent that this statement or other statements may be subject to *Bruton* or may implicate Heine's rights at a joint trial under the Confrontation Clause, the Court will be able to employ appropriate remedial measures, such as proper limiting instructions and redactions, if necessary.[5] *See Richardson*, 481 U.S. at 211 (holding "that the Confrontation clause is not violated by the admission of a nontestifying

---

[5] The Court also notes that Fed. R. Evid. 801(d)(2)(E) provides that a statement offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. A statement properly admitted under Fed. R. Evid. 801(d)(2)(E) does not violate a defendant's Confrontation Clause rights. *United States v. Lujan*, 936 F.2d 406, 410 (9th Cir. 1991) (finding no Confrontation Clause violation because "the requirements of Rule 801(d)(2)(E) are satisfied.") (citing *Bourjaily v. United States*, 483 U.S. 171, 183-84 (1987)).

codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence"). Thus, severance is not warranted on this basis.

### 3. Mutually Antagonistic Defenses

Heine further argues that severance is required because he will be severely prejudiced by the mutually antagonistic defenses that he and Yates will present at a joint trial. "Mutually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538. Rather, "[t]o warrant severance on the basis of antagonistic defenses, codefendants must show that their defenses are irreconcilable and mutually exclusive." *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc), (citing *United States v. Sherlock*, 962 F.2d 1349, 1363 (9th Cir. 1992)). "Defenses are mutually exclusive when 'acquittal of one codefendant would necessarily call for the conviction of the other.'" *Id.* (quoting *Tootick*, 952 F.2d at 1081). A "defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). The Ninth Circuit, however, has rejected a *per se* rule against joinder even where defendants maintain mutually exclusive defenses at trial. *Tootick*, 952 F.2d at 1083. *But see* Scott Hamilton Dewey, *Irreconcilable Differences: The Ninth Circuit's Conflicting Case Law Regarding Mutually Exclusive Defenses of Criminal Codefendants*, 8 Boalt J. Crim. L. 2, ¶ 8 (2004) (noting that without overruling *Tootick*, subsequent Ninth Circuit decisions "repeatedly have cited the earlier per se rule rejected in *Tootick*").

The Ninth Circuit has described the "'prototypical example'" of mutually exclusive defenses as when "'each of the two defendants claims innocence, seeking to prove instead that

PAGE 12 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

the other committed the crime.'" *Tootick*, 952 F.2d at 1081 (quoting *United States v. Holcomb*, 797 F.2d 1320, 1324 (5th Cir. 1986)). In *United States v. Tootick*, three individuals—Hart, Tootick, and Frank—traveled to a secluded area, where Hart was stabbed and then run over by an automobile. *Id.* at 1080. Hart survived the assault and testified at Tootick and Frank's joint trial that Frank stabbed him. *Id.* Frank testified that Tootick was responsible for the assault. *Id.* at 1081. Tootick did not testify, but his counsel argued that Tootick was highly intoxicated and unconscious during the assault. *Id.* The Ninth Circuit explained that:

> Because only Frank and Tootick were present when Hart was attacked, and because there was no suggestion that Hart injured himself, the jury could not acquit Tootick without disbelieving Frank. Each defense theory contradicted the other in such a way that the acquittal of one necessitates the conviction of the other.

*Id.* Thus, the defenses were mutually exclusive. The Ninth Circuit reversed the convictions of Frank and Tootick, concluding that the "jury could not have been able to assess the guilt or innocence of the defendants on an individual and independent basis" because the prejudicial effect of the mutually exclusive defenses was not cured by appropriate jury instructions. *Id.* at 1083.

In the Alberts Declaration filed under seal with the Court,[6] Heine identifies several instances where the discovery purportedly shows that the defendants have provided conflicting narratives that create mutually antagonistic and factually irreconcilable defenses. In each of these instances, Heine disclaims knowledge and involvement in the misconduct that is alleged in the Indictment and represents that he intends to present evidence that Yates was responsible for the alleged misconduct. Heine adds that he believes that Yates intends to do the same in her defense,

---

[6] *See supra* n.2.

PAGE 13 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

denying knowledge and involvement on the part of Yates in any misconduct and presenting evidence that Heine is responsible for the alleged wrongdoing.

For example, both Heine and Yates assert that they were unaware of the "straw buyer" purchase of the A Avenue Property described in the Indictment. The Indictment alleges that "DEFENDANTS" provided D.W. with two checks from Bank funds to fund the purchase of the home. Dkt. 1 at 7. Heine argues that because the government intends to present evidence that these Bank funds could only have been accessed by Heine or Yates, a jury's conclusion that one of the defendants did not access the funds at issue requires the conclusion that the other defendant did, resulting in a situation where "'acquittal of one codefendant would necessarily call for the conviction of the other.'" *Angwin*, 271 F.3d at 795 (quoting *Tootick*, 952 F.2d at 1081). Yates, however, asserts her intent to present a defense that she had no expertise in real estate lending and relied on the judgment of other Bank employees, including Heine and Walsh, in matters relating to loans and real estate. A jury could find that Yates acted through mistake and negligence, but without an intent to deceive, and thus could "acquit [Heine] without disbelieving [Yates]." *See Tootick*, 952 F.2d at 1081.

The Court finds that although Heine and Yates intend to blame each other for the crimes with which they are each charged, their defenses are not so mutually antagonistic as to mandate severance. This case is not like *Tootick*, where there was no evidence to support a finding that someone other than the two defendants was responsible for the crime. The Indictment here alleges that Heine and Yates often acted in concert with other unnamed individuals both known and unknown to the Grand Jury. Walsh has already accepted responsibility for certain misconduct during his time at the Bank related to actions described in the Indictment, including the straw buyer purchase of the A Avenue Property. Thus, unlike in *Tootick*, the jury in a joint

PAGE 14 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

trial of Heine and Yates will have the flexibility to find that someone other than Heine or Yates is responsible for the crimes alleged.

Additionally, to the extent that Heine and Yates will present conflicting defenses, any resulting prejudice can be mitigated by appropriate instructions to the jury. Even in *Tootick*, the Ninth Circuit recognized that severance would not have been required had the court provided the jury with appropriate cautionary instructions. *Id.* at 1086 ("The joint trial of defendants pleading mutually exclusive defenses raises heightened risks that the defendants may be prejudiced. . . . Safeguards were inadequate in this case. Because the defendants have demonstrated that the trial, *as conducted*, resulted in manifest prejudice, we hold that the trial court's failure to sever constituted an abuse of discretion.") (emphasis added); *see also Zafiro*, 506 U.S. at 537-38 (declining to adopt a "bright-line rule . . . mandating severance whenever codefendants have conflicting defenses"). Thus, the Court finds that severance is not required on the grounds that Heine and Yates may present conflicting defenses at trial.

### 4. Conclusion

Based the benefits of having a joint trial, especially when codefendants are charged with conspiracy, the Court finds that these benefits outweigh any possible prejudice that Heine may face in being tried together with Yates. *See Fernandez*, 388 F.3d at 1242. Additionally, any prejudice to Heine that may result from a joint trial can, and will, be mitigated by appropriate and diligent instructions to the jury. *See id.* at 1243 ("We have repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial."). The Court believes that a jury will be able to compartmentalize the evidence against each of Heine and Yates and make a reliable judgment regarding each of their separate innocence or guilt. *See Sullivan*, 522 F.3d at 981-82. Heine's motion for severance is denied.

**B. Yates's Motion for Severance[7]**

Yates argues that a joint trial will improperly prejudice her ability to present an individual defense because much of the exculpatory evidence that she intends to present at trial risks exclusion as unfairly prejudicial to Heine under Fed. R. Evid. 403. *See Zafiro*, 506 U.S. at 539 (stating that "a defendant might suffer prejudice [under Rule 14(a)] if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."). Yates asserts that the exculpatory evidence that she intends to introduce evidence at trial includes Heine's bad acts and misconduct outside the scope of the Indictment, including inappropriate behavior with other Bank employees, fraudulently taking a tax deduction on his personal taxes for a charitable donation that the Bank and not Heine personally had made, and making an unauthorized $50,000 charitable deduction on behalf of the Bank, among other acts. Yates argues that this evidence is relevant to her defense because it will support her theory of Heine's character trait of dishonesty, his tendency to shift blame, and his motive to engage in Bank fraud, but that it risks exclusion at a joint trial as unfairly prejudicial to Heine.

Thus, Yates makes substantially similar arguments in her motion for severance that Heine makes in his motion. Specifically, Yates argues that she intends to present evidence at trial of Heine's alleged bad acts and conduct and asserts that she may not be permitted to do so at a joint trial. Like Heine, however, Yates fails to make a showing that "*essential* exculpatory evidence"

---

[7] Yates also requests that the Court defer resolution of her motion for severance because she has not yet completed her defense investigation and review of the discovery in her case. Yates hypothesizes that admission of Heine's out-of-court statements is likely to violate her Sixth Amendment right to confront her accusers and that her defense theory is likely to be mutually antagonistic to Heine's. Yates adds, however, that it is too soon for her to provide evidence in support of these potential arguments. The Court declines to defer ruling on Yates's pending motion for severance, *see* Dkt. 175, but grants to both Yates and Heine leave to renew their severance motions in a timely fashion in the future, if either Yates or Heine discovers additional evidence that would support such a renewed motion.

will be excluded in a joint trial. *See id.* (emphasis added). The evidence that Yates asserts that she will seek to introduce—primarily, instances of Heine's alleged misconduct outside the scope of the Indictment—does not substantially bear on Yates's innocence or guilt with respect to the crimes with which she is charged. Thus, even if this evidence were to be excluded at a joint trial as unfairly prejudicial to Heine, the evidence is only tangential to the "critical question" of Yates's participation in the crimes alleged in the Indictment.[8] *See Grisby*, 130 F.3d at 370. If this evidence were to be excluded, Yates appropriately may still present her theory of Heine's dishonesty and tendency to shift blame. Accordingly, there is no "serious risk that a joint trial would compromise" Yates's right to present an individual defense. *See Zafiro*, 506 U.S. at 539.

Yates also argues that severance is required to avoid the prejudice that would result were Heine allowed to admit bad character evidence of Yates. *See Zafiro*, 506 U.S. at 539 (stating that prejudice under Rule 14 may result "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant"). Yates's argument is speculative; she does not identify any specific evidence likely to be admitted that would result in unfair prejudice to her. Additionally, any prejudice that may result from the Court's rulings on the admissibility of evidence can, and will, be mitigated by appropriate instructions to the jury. *See Escalante*, 637 F.2d at 1201 ("The prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge."). Thus, severance is not warranted on this basis.

In Yates's reply, she argues that severance is also required because she and Heine intend to present mutually exclusive defenses. Yates's argument regarding mutually exclusive defenses is nearly identical to Heine's argument on this point, which the Court discussed earlier. Thus, for

---

[8] The Court reiterates that at this point in time it is not making any rulings on the admissibility of evidence at trial.

PAGE 17 – OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SEVERANCE

the reasons already stated, the Court finds that severance is not required on the grounds that Heine and Yates may intend to present conflicting defenses at trial.

The Court concludes that the benefits presented by a joint trial outweigh any possible prejudice that Yates may face in being tried with Heine. *See Fernandez*, 388 F.3d at 1242. Additionally, any prejudice to Yates will be mitigated by appropriate jury instructions. *See id.* at 1243. Further, the Court believes that a jury will be able to evaluate Yates's culpability individually from Heine's. Accordingly, Yates's motion for severance is denied.

## CONCLUSION

Heine's Motion for Severance (Dkt. 109) and Yates's Motion for Severance (Dkt. 110) are each DENIED.

**IT IS SO ORDERED**.

DATED this 14th day of March, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge