# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:15-cr-00238-SI-2 |
| v. | **OPINION AND ORDER ON THE BANK OF OSWEGO'S MOTION TO QUASH SUBPOENA FROM DEFENDANT DIANA YATES** |
| **DAN HEINE and DIANA YATES**, | |
| Defendants. | |

Billy J. Williams, United States Attorney, and Claire M. Fay, Michelle Holman Kerin, and Quinn P. Harrington, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the United States of America.

Janet Lee Hoffman, Carrie Menikoff, and Andrew Weiner, JANET HOFFMAN & ASSOCIATES, LLC, 1000 S.W. Broadway, Suite 1500, Portland OR 97205. Of Attorneys for Defendant Diana Yates.

G. Kevin Kiely, Casey M. Nokes, and Nicole M. Swift, CABLE HUSTON, LLP, 1001 S.W. Fifth Avenue, Suite 2000, Portland, OR 97204. Of Attorneys for The Bank of Oswego.

**Michael H. Simon, District Judge.**

Defendants Diana Yates ("Yates") and Dan Heine ("Heine") are charged with conspiracy to commit bank fraud and making false bank entries, reports, and transactions during the time that they were affiliated with The Bank of Oswego (the "Bank"). On June 14, 2016, Yates served her second subpoena *duces tecum* pursuant to Rule 17(c) of the Federal Rules of Criminal

PAGE 1 – OPINION AND ORDER

Procedure on the Bank (the "Subpoena"). Before the Court is the Bank's Motion to Quash or

Modify Yates's Subpoena. For the reasons that follow, the Bank's Motion is granted in part and

denied in part.

## STANDARDS

Rule 17(c)(1) of the Federal Rules of Criminal Procedure provides, in relevant part:

> A subpoena may order the witness to produce any books, papers,
> documents, data, or other objects the subpoena designates. The
> court may direct the witness to produce the designated items in
> court before trial or before they are to be offered in evidence.

Rule 17(c) is not intended to provide a means of discovery in criminal cases; rather, its purpose

is to expedite trial by "providing a time and place before trial for the inspection of subpoenaed

materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974) (citing *Bowman Dairy Co. v.

United States*, 341 U.S. 214, 220 n.5 (1951)). A district court may, within its discretion, quash or

modify a Rule 17(c) subpoena if compliance would be unreasonable or oppressive, or if the

subpoena calls for privileged information. *Id.* at 698; *see also United States v. Reyes*, 239 F.R.D.

591, 598 (N.D. Cal. 2006).

The party issuing a subpoena under Rule 17(c) bears the burden of showing the

relevancy, admissibility, and specificity of the requested materials. *Nixon*, 418 U.S. at 700.

"Thus, a subpoena is limited to evidentiary materials, and courts will not allow general requests

for categories of only arguably relevant documents that indicate the subpoena falls in the

category of the much maligned 'fishing expedition.'" 2 Charles Alan Wright, Andrew J. Leipold,

Peter J. Henning & Sarah N. Welling, *Federal Practice and Procedure* § 275 (4th ed. 2015).

### A.  Relevancy

A party seeking to enforce a subpoena issued under Rule 17(c) must demonstrate "a

sufficient likelihood" that the documents or information sought are "relevant to the offenses

charged in the indictment." *Nixon*, 418 U.S. at 700; *cf. United States v. Mason*, 2008 WL 1909115, at *1 (D. Or. Apr. 25, 2008) (restating the standard as requiring the party to demonstrate "a 'sufficient likelihood' that the documents sought are material to any issue in the case.") (quoting *Nixon*, 418 U.S. at 700). One treatise describes the "relevancy" requirement as follows:

> Because evidence that is not relevant is not admissible, the "relevancy" hurdle of Rule 17(c) is really a subset of the "admissibility" hurdle and not an independent requirement at all. But reciting it as a separate requirement does serve to emphasize that the proponent of the subpoena must show that the requested documents are relevant to an issue that will be of consequence at the trial *or hearing*.

Robert M. Cary, Craig D. Singer & Simon A. Latcovich, *Federal Criminal Discovery* 226 (ABA Criminal Justice Section 2011) (emphasis added) (footnotes omitted).

**B. Admissibility**

A party seeking to enforce a subpoena issued under Rule 17(c) also must make "a sufficient preliminary showing that each of the subpoenaed [materials] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. A district court "must seek to predict whether the materials will be admissible as evidence based on the best information before the court at the time the subpoena is evaluated." *Federal Criminal Discovery* 227; *see also id.* at 228 (footnote omitted) ("the 'admissibility' requirement obliges the proponent of a subpoena to articulate what admissible evidence the subpoena is likely to produce"); *cf. United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) ("Admittedly, it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied.").

"Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701. Thus, in *United States v. Fields*, 663 F.2d 880 (9th Cir. 1981), the Ninth Circuit reversed the district court's order denying a third-party bank's motion to quash a Rule 17(c) subpoena because the "only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes." *Id.* at 881. The Ninth Circuit, relying on *Nixon*, stated that such "use is generally insufficient to justify the pretrial production of documents, and held that "requiring [the bank] to produce the documents before any witnesses had testified was an abuse of discretion." *Id.*

In *United States v. Shinderman*, 432 F. Supp. 2d 157 (D. Me. 2006), however, Judge Hornby rejected the government's argument that *Fields* stood for "an absolute prohibition on the use of a Rule 17(c) subpoena to obtain documents solely for impeachment purposes." *Id.* at 160 (quotation marks omitted). Judge Hornby explained that the government's reading of *Fields* was "too broad" because that case "held only that impeachment documents under Rule 17 need not be produced *until the relevant witness testified.*" *Id.* (emphasis in original) (citing *Fields*, 663 F.2d at 881); *see also Federal Practice and Procedure* § 275 n.24 (citing *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980)) ("Although material usable for impeachment is evidentiary, and within Rule 17(c), it does not become evidentiary until the witness has testified at trial. Thus, prior inconsistent statements of a witness are not subject to production and inspection prior to trial . . . .").

Additionally, materials relevant to show bias or motive may satisfy *Nixon*'s admissibility requirement. For example, in *United States v. Yudong Zhu*, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014), the court considered the admissibility of the defendant's request for materials that

the defendant argued would be relevant at trial to establish bias on the part of his former

employer. *Id.* at *5. The court applied the rule that "[u]nlike standard impeachment evidence,

which is admissible only in limited circumstances, '[e]xtrinsic proof tending to establish a reason

to fabricate is never collateral and may not be excluded on that ground.'" *Id.* (second alteration in

original) (quoting *United States v. Frank*, 208 F.3d 204, 2000 WL 326362, at *3 (2d Cir.

Mar. 28, 2000) (unpublished)). Thus, the court held that documents relating to the former

employer's alleged bias were admissible. *Id.* Similarly, in *United States v. Carollo*, 2012 WL

1195194 (Apr. 9, 2012), the court found that the *Nixon* admissibility requirement was met where

the subpoenaed documents went

> beyond simply demonstrating prior conduct in order to attack [the
> unindicted, co-conspirator witness's] character for truthfulness and
> may suggest bias or a motive on the part of [the witness] to
> cooperate with the government on the conspiracy count in order to
> protect assets that arose out of that conspiracy, to protect himself
> from indictment here, or to otherwise guard against additional
> charges for other crimes.

*Id.* at *2.

## C. Specificity

In addition, when a party seeks to enforce a subpoena under Rule 17(c), the "subpoena

must refer to specific documents or, at least, to specific kinds of documents." *United States v.*

*Venecia*, 1997 WL 325328, at *3 (D. Or. May 16, 1997); *see also Federal Criminal*

*Discovery* 232 (stating that a Rule 17(c) subpoena "must seek particular documents, or narrow

categories of documents, that the proponent reasonably believes exist and are likely to satisfy the

relevancy and admissibility requirements"). Although "the proponent of a subpoena cannot be

expected to identify the materials he seeks in exacting detail, when (as demonstrated by the fact

he must employ a subpoena) he does not have access to them," a party must "provide details

sufficient to establish that the subpoena's proponent has made a good-faith effort to obtain

evidentiary material and is not engaged in the proverbial 'fishing expedition.'" *Reyes*, 239 F.R.D. at 590 (quoting *Nixon*, 418 U.S. at 699-700); *see also Federal Practice and Procedure* § 275 (footnotes omitted) ("A subpoena that fails to describe any specific documents is too broad, but it is not necessary that the subpoena designate each particular paper desired. It is sufficient if kinds of documents are designated with reasonable particularity.").

Within the Ninth Circuit, "[r]equesting entire files instead of specific documents indicates a fishing expedition." *Venecia*, 1997 WL 325328, at *3 (citing *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984)). For example, in *Reed*, the Ninth Circuit upheld the district court's decision to quash a Rule 17(c) subpoena for the city's arson files in part because the appellants "did not request specific documents, but sought entire arson investigation files." 726 F.2d at 577. The Ninth Circuit explained that "Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'" *Id.* (quoting *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981)).

## BACKGROUND

In 2004, Yates and Heine co-founded the Bank, a financial institution engaged in the business of personal and commercial banking and lending. The Bank is headquartered in Lake Oswego, Oregon. Heine served as the Bank's President and Chief Executive Officer ("CEO"). As President and CEO, Heine supervised and managed the Bank's affairs and operations. Heine was also a member of the Bank's Board of Directors (the "Board"). Heine left the Bank in 2014.

Yates, a certified public accountant, served as the Bank's Executive Vice President and Chief Financial Officer ("CFO"). As CFO, Yates was responsible for ensuring the Bank's compliance with state and federal regulations. Yates was also the Secretary of the Board. She resigned from the Bank in March 2012.

Both Yates and Heine were responsible for ensuring that the Bank operated in a sound and safe manner and for keeping the Board informed about the Bank's financial condition and the adequacy of the Bank's policies, procedures, and internal controls. Additionally, Yates and Heine were members of the Bank's Internal Loan Committee (the "ILC"). The duties of the ILC included approving loans that were outside the authority of individual Bank loan officers, ensuring the quality of the Bank's loan portfolio, and minimizing risks in that portfolio.

On June 24, 2015, a federal grand jury issued a twenty-seven count indictment (the "Indictment") against both Yates and Heine for alleged conduct related to their time with the Bank. The Indictment charges Yates and Heine with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and twenty-six counts of making false bank entries, reports, and transactions, in violation of 18 U.S.C. § 1005. The Indictment alleges that beginning in about September 2009 and continuing through at least September 2014, Yates and Heine conspired to defraud the Bank by means of materially false representations and promises. The Indictment further alleges that the purpose of the conspiracy was to conceal the true financial condition of the Bank from the Board, the Bank's shareholders, regulators, and the public. According to the Indictment, Yates and Heine reported false and misleading information about loan performance, concealed information about the status of foreclosed properties, made unauthorized transfers of Bank proceeds, and failed to disclose material facts about loans to the Board, shareholders, and regulators, all in an effort to conceal the Bank's financial condition.

The Indictment also names Geoffrey Walsh ("Walsh") as a person who played a role in the alleged conspiracy. Walsh was the former Senior Vice President of Lending at the Bank. Yates was Walsh's manager. In May 2012, the Bank, acting through Heine, terminated the employment of Walsh for cause, in part based on Walsh's alleged misconduct concerning

lending practices. The Bank subsequently filed a civil lawsuit against Walsh, alleging that Walsh breached his fiduciary duties. *The Bank of Oswego v. Geoffrey Walsh*, Clackamas County Circuit Court Case No. CV12060128. The Bank also submitted a bond claim with its insurer in an attempt to recoup losses allegedly caused by Walsh and Yates.

Walsh was later indicted and charged in a separate criminal case, *United States v. Walsh*, 3:13-cr-00332-SI-1 (D. Or. 2013), for conspiracy to commit wire fraud, wire fraud, and conspiracy to make false entries in bank records, among other charges. On July 22, 2015, Walsh pleaded guilty to certain charges alleged in a superseding indictment and a second superseding information. In Walsh's plea agreement, he accepted responsibility for acts related to those described in the Indictment against Yates and Heine. Walsh is currently awaiting sentencing.

The Indictment against Yates and Heine alleges five schemes that purportedly advanced the alleged conspiracy's purpose of creating a healthier appearance of the Bank's finances than actually existed:

1. <u>Payments Made on Delinquent Loans</u>. The Indictment alleges that Yates and Heine made payments, using Bank proceeds, on behalf of Bank customers who were delinquent on their loans. The payments were sometimes made without the knowledge or consent of the Bank customer. The payments were made so that the delinquent loans would not appear in the "Call Reports."[1] Between approximately September 2009 and May 2012, Yates and Heine directed Walsh to make payments from his personal banking account to the accounts of Bank customers who were delinquent on their loans. On March 31, 2011, Yates transferred funds from a Bank customer's business checking account to the customer's personal loan account, which was delinquent, without the customer's consent. Yates and Heine's alleged practice of paying delinquent loans with Bank or other proceeds hid delinquent loans that would have otherwise been included in the "Call Reports" and reported to the Board.

---

[1] Federal regulations required the Bank to file with the Federal Deposit Insurance Corporation ("FDIC") on a quarterly basis what are commonly known as "Call Reports." A Call Report contains data about the Bank's financial position and is divided into a number of schedules. One of the schedules, known as "Schedule RC-N," requires disclosure of the full value of outstanding loans.

2.  Wire Transfer and Loan to Bank Customer M.K. The Indictment alleges that
    between July 2010 and September 2010, Yates and Heine "permitted an
    unsecured draw for Bank customer M.K. to be made and then approved a $1.7
    million loan for the benefit of M.K. in order to conceal the unsecured draw and to
    pay other Bank borrowers' delinquent loans." ECF 1 at 5. Yates approved the
    $675,000 unsecured draw.

3.  Straw Buyer Purchase. The Indictment alleges that from October 2010 through
    May 2011, Yates and Heine recruited a Bank employee, D.W., "to facilitate a
    straw buyer purchase of real property located at 952 A Avenue, Lake Oswego,
    Oregon 97034" (the "A Avenue Property") with the purpose of concealing a loss
    to the Bank. ECF 1 at 7. Yates and Heine gave D.W. two checks totaling
    $267,727.89 from the Bank's cash account to purchase the A Avenue Property.
    The Indictment alleges that Yates falsely represented in transactional documents
    that D.W. funded the purchase personally.

4.  Other Real Estate Owned ("OREO") Properties Sold to Bank Customer R.C. The
    Indictment alleges that from March 2010 through June 2013, Yates and Heine
    removed two properties from the Bank's OREO account after the properties were
    sold to a Bank borrower, R.C., "even though the sales did not meet the
    requirements to remove the properties from the account." ECF 1 at 9. Yates and
    Heine did not require R.C. to make any down payment and provided R.C. with
    full financing from the Bank for both properties. As a result of the transactions,
    the properties were no longer reported on the "Call Reports" as OREO assets. On
    January 24, 2011, FDIC examiners questioned the validity of the removal of the
    properties from the Bank's OREO account and advised Yates and Heine that the
    purchases did not meet the minimum equity requirements needed to remove the
    properties. Yates advised the FDIC examiners that R.C. was going to make down
    payments for the two homes, which would then permit the Bank properly to
    remove the properties from the OREO account. On January 31, 2011, Yates
    prepared two memos to each of the R.C. loan files that falsely stated R.C. was
    willing to make a 15 percent down payment on the properties. Yates and Heine
    represented that R.C. paid down payments for the properties, when in fact no
    payment was received by the Bank.

5.  Misrepresentation to Shareholders. The Indictment alleges that from
    September 2009 through September 2014, Yates and Heine caused the Bank to
    misrepresent to the Bank's shareholders the Bank's Texas Ratio, which is a
    measure of the Bank's credit troubles, thus misrepresenting the true extent of
    delinquent loans.

The Indictment further alleges that Yates and Heine knowingly made twenty-six false

entries in the books, reports, and statements of the Bank with the intent to injure and defraud the

Bank. According to the Indictment, Yates and Heine did so by omitting material information

about the true status of loans and assets from the "Call Reports" and reports to the Board.

The jury trial on the charges against both Yates and Heine is scheduled to begin on

November 1, 2016. Yates's Motion to Continue the trial date is currently pending. ECF 280.

## DISCUSSION

Yates's Subpoena to the Bank contains the following three separate requests:

> Request No. One: Handwritten notes or memoranda prepared by
> attorney Casey Nokes or any employee or representative of Cable
> Huston LLP, reflecting or referencing teleconferences or in-person
> meetings with federal criminal and civil investigators that occurred
> between February 1, 2013 and July 30, 2013.

> Request No. Two: The following *unredacted* Cable Huston LLP
> billing statements for the Bank of Oswego, Account
> No. 29284.001: (a) Billing statement dated March 19, 2013 (Bates
> nos. BANK183979-86); (b) Billing statement dated April 17, 2013
> (Bates nos. BANK183987-95); (c) Billing statement dated May 16,
> 2013 (Bates nos. BANK183996-4000); (d) Billing statement dated
> June 19, 2013 (Bates nos. BANK184001-06); (e) Billing statement
> dated July 16, 2013 (Bates nos. BANK184007-13); (f) Billing
> statement dated August 19, 2013 (Bates nos. BANK184014-18).

> Request No. Three: The following *unredacted* Cable Huston LLP
> billing statement for the Bank of Oswego, Account 29284.002:
> (a) Billing statement dated April 17, 2013 (Bates nos.
> BANK183953-59).

The Bank argues that the requested materials are unrelated to the charges in Yates's

Indictment and thus fail to meet *Nixon*'s relevancy requirement. The Bank also argues that the

requested materials constitute hearsay and thus fail to meet *Nixon*'s admissibility requirement.

Finally, the Bank argues that Request No. One seeks materials subject to the attorney-client and

work-product privileges. The Bank asserts that the requested notes or memoranda "took the form

of confidential e-mails with the Bank for the purpose of providing professional legal advice

during the investigation." ECF 270 at 5.

Yates responds that the requested materials are necessary to her anticipated motion to suppress.[2] In her publicly-filed memorandum in opposition to the Bank's motion to quash (ECF 283), Yates states that she intends to make two arguments in her motion to suppress. First, Yates intends to argue that the Bank's attorney acted as a government agent when he took Yates's deposition in May 2013 in the civil case against Walsh, resulting in a violation of her Fifth Amendment rights. Second, Yates intends to argue that she is entitled to suppression of statements she made to FBI agents because the FBI agents deliberately misled her regarding the nature of the investigation and Yates's status as a cooperating witness.

In support of her subpoena, Yates argues that the requested materials meet *Nixon*'s relevancy requirement because they will tend to establish that the Bank's attorney was coordinating with government investigators to develop evidence in a manner that violated Yates's Fifth Amendment right against self-incrimination. Yates maintains that already-produced discovery reveals that the Bank's attorney had three meetings with federal investigators in 2013, each of which lasted anywhere from 18 to 24 minutes, for which no corresponding government record or memorandum exists. Yates additionally states that already-produced discovery reveals that the Bank's law firm redacted portions of its billing statement entries, and that the government has confirmed that one redaction refers to a meeting between the Bank's attorney and FBI agents in March of 2013.

Yates makes several arguments that the requested materials meet *Nixon*'s admissibility requirement. First, Yates argues that the requested materials are admissible because they will tend to establish the Bank's bias and motive to shift blame for any misconduct onto Yates after her resignation and the Bank's opportunity to conspire with the government to obtain

---

[2] A hearing on Yates's anticipated motion to suppress currently is scheduled for August 22, 2016. ECF 253.

incriminating statements from Yates in violation of her constitutional rights. Second, Yates argues that the requested materials are admissible because a district court may consider hearsay evidence at a suppression hearing. *See United States v. Swearingen*, 1995 WL 306745, at *4 (9th Cir. May 18, 1995) (unpublished) (holding in part that a district court did not abuse its discretion in considering hearsay testimony at a suppression hearing). Third, Yates argues that a law firm's billing records are admissible as business records. *See MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) (holding in part that a district could did not err when it admitted law firm bills into evidence under the business records hearsay exception).

Yates additionally argues that the Bank's assertion of privilege with regard to Request No. One is overbroad. Yates asserts that to the extent the requested materials merely recite non-confidential communications between the Bank's counsel and the government, the Bank is not providing legal advice, and thus the communications are not subject to the attorney-client privilege.[3] Yates additionally asserts that the work-product doctrine is inapplicable because the requested materials were not prepared in anticipation of litigation. *Compare Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (stating that "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties" are not discoverable) *with* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover

---

[3] An eight-part test used to determine whether information is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

documents and tangible things that are prepared in anticipation of litigation or for trial by or for

another party or its representative (including the other party's attorney . . . .").

The Court notes, however, that Yates seeks notes or memoranda that reflect

communications regarding federal criminal and civil investigations into misconduct at the Bank

during the time when Heine was still CEO of the Bank. In addition, the attorney-client privilege

does not protect from disclosure the dates when an attorney meets with someone and the

identities of any persons attending that meeting. Paul R. Rice, 1 *Attorney-Client Privilege in the*

*United States* § 6:23 (stating that "dates, times, and places of meetings, information about who

was present at each meeting, work that was done by the attorney, and conditions under which the

attorney was employed are not protected" by the attorney-client privilege).

## A.  Request No. One Ruling

In Request No. One, Yates seeks production of the following:

> Handwritten notes or memoranda prepared by attorney Casey
> Nokes of any employee or representative of Cable Huston LLP,
> reflecting or referencing teleconferences or in-person meetings
> with federal criminal and civil investigators that occurred between
> February 1, 2013 and July 30, 2013.

The Bank's motion to quash Request No. One is GRANTED IN PART. The Court finds that

Request No. One improperly calls for privileged information and that redaction of any

unprivileged information would be unreasonable and oppressive. The Court, however, directs the

Bank to review the requested materials to determine whether any meetings with federal

investigators are not already reflected in the billing statements that are the subject of Request

Nos. Two and Three. To the extent that any meetings are not reflected in the billing statements,

the Bank shall produce redacted copies of the notes and memoranda indicating the dates of such

meetings and the persons who attended.

**B.  Request Nos. Two and Three Ruling**

In Request Nos. Two and Three, Yates seeks production of the following:

> The following *unredacted* Cable Huston LLP billing statements for
> the Bank of Oswego, Account No. 29284.001: (a) Billing
> statement dated March 19, 2013 (Bates nos. BANK183979-86); (b)
> Billing statement dated April 17, 2013 (Bates nos. BANK183987-
> 95); (c) Billing statement dated May 16, 2013 (Bates nos.
> BANK183996-4000); (d) Billing statement dated June 19, 2013
> (Bates nos. BANK184001-06); (e) Billing statement dated July 16,
> 2013 (Bates nos. BANK184007-13); (f) Billing statement dated
> August 19, 2013 (Bates nos. BANK184014-18).

> The following *unredacted* Cable Huston LLP billing statement for
> the Bank of Oswego, Account 29284.002: (a) Billing statement
> dated April 17, 2013 (Bates nos. BANK183953-59).

The Bank's Motion to Quash Request Nos. Two and Three is DENIED. The Court finds that the

requested information is specifically identified, relevant to Yates's motion to suppress, and may

be admissible. The Court notes that the Bank makes no argument that the requested information

is privileged. *See* ECF 270 at 7.

## CONCLUSION

The Bank's Motion to Quash or Modify Defendant Yates's Rule 17(c) Subpoena

(ECF 270) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**.

DATED this 6th day of July, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge