# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:15-cr-238-SI |
| v. | **OPINION AND ORDER ON OBJECTIONS TO EXPERT WITNESS TESTIMONY** |
| **DAN HEINE and DIANA YATES**, | |
| Defendants. | |

Billy J. Williams, United States Attorney, and Claire M. Fay, Michelle Holman Kerin, and Quinn P. Harrington, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the United States of America.

Jeffrey Alberts and Mark Weiner, PRYOR CASHMAN, LLP, 7 Times Square, New York, NY 10036; Caroline Harris Crowne and Michael C. Willes, TONKON TORP, LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendant Dan Heine.

Janet Lee Hoffman, Kelsey R. Jones, Andrew T. Weiner, Katherine Feuer, and Douglas J. Stamm, JANET HOFFMAN & ASSOCIATES, LLC, 1000 S.W. Broadway, Suite 1500, Portland OR 97205; Matthew J. Kalmanson, HART WAGNER, LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant Diana Yates.

**Michael H. Simon, District Judge.**

Defendants Dan Heine ("Heine") and Diana Yates ("Yates") are charged with conspiring to commit bank fraud and making false bank entries, reports, and transactions during the time when they were the two most senior officers of The Bank of Oswego. A four-week jury trial is

set to begin on May 2, 2017. Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, all parties requested written summaries of the expert witness testimony that each party intends to present at trial. After those summaries were exchanged, the parties raised objections to some of the anticipated expert witness testimony. This Opinion and Order addresses the parties' objections.

## BACKGROUND

As alleged in the Indictment (ECF 1), Heine and Yates co-founded The Bank of Oswego (the "Bank") in 2004. Based in Lake Oswego, Oregon, the Bank is a financial institution engaged in the business of personal and commercial banking and lending.[1] Heine previously served as the Bank's President and Chief Executive Officer ("CEO"). As President and CEO, Heine supervised and managed the Bank's affairs and operations. Heine also was a member of the Bank's Board of Directors (the "Board"). Heine left the Bank in September 2014. Yates previously served as the Bank's Executive Vice President and Chief Financial Officer ("CFO"). As CFO, Yates was responsible for ensuring the Bank's compliance with federal and state regulations. Yates also was the Secretary of the Board. Yates resigned from the Bank in March 2012 after disagreements with Heine.

Both Heine and Yates were responsible for ensuring that the Bank operated in a sound and safe manner and for keeping the Board informed about the Bank's financial condition and the adequacy of the Bank's policies, procedures, and internal controls. Additionally, Heine and Yates were members of the Bank's Internal Loan Committee (the "ILC"). The duties of the ILC

---

[1] On August 12, 2016, the Bank sold loans and other assets to HomeStreet Bank. The Bank of Oswego continues to exist as a corporate entity, but has relinquished its banking charter and now operates as Oswego Resolution. ECF 481.

included approving loans that were outside the authority of individual Bank loan officers, ensuring the quality of the Bank's loan portfolio and minimizing risks in that portfolio.

The Bank is subject to regular monitoring and examinations by the Federal Deposit Insurance Corporation ("FDIC"). For example, federal regulations require the Bank to file with the FDIC on a regular basis Consolidated Reports of Condition and Income for a Bank with Domestic Offices Only, commonly called "Call Reports." A call report contains data about the Bank's financial position and is divided into a number of schedules. One of these schedules, known as "Schedule RC-N," requires disclosure of the correct value of outstanding loans.

On June 23, 2015, a federal grand jury returned a 27-count Indictment against Heine and Yates, alleging misconduct related to their activities with the Bank. The Indictment charges Heine and Yates with one count of conspiring to commit bank fraud, in violation of 18 U.S.C. § 1349, and 26 counts of making false bank entries, reports, and transactions, in violation of 18 U.S.C. § 1005. The Indictment alleges that beginning in September 2009, Heine and Yates conspired to defraud the Bank through materially false representations and promises. The Indictment further alleges that one of the purposes of the conspiracy was to conceal the true financial condition of the Bank from the Board, the Bank's shareholders, the Bank's regulators, and the public. According to the Indictment, Heine and Yates reported false and misleading information about loan performance, concealed information about the status of foreclosed properties, made unauthorized transfers of Bank proceeds, and failed to disclose material facts about loans to the Board, shareholders, and regulators.

The Indictment alleges the following five schemes to advance the conspiracy's purpose of falsely creating a healthier appearance of the Bank's finances than actually existed:

1. _Payments Made on Delinquent Loans._ Heine and Yates made payments, using Bank proceeds, on behalf of Bank customers who were delinquent on their loans.

The payments sometimes were made without the knowledge or consent of the Bank's customer. The payments were made so that the delinquent loans would not appear in the Call Reports. On March 31, 2011, Yates transferred funds from a Bank customer's business checking account to the customer's personal loan account, which was delinquent, without the customer's consent. Heine and Yates's alleged practice of paying delinquent loans with Bank or other proceeds hid delinquent loans that otherwise would have been included in the Call Reports and reported to the Board.

2. <u>Wire Transfer and Loan to Bank Customer M.K.</u> Between July 2010 and September 2010, Heine and Yates permitted to be made an unsecured draw in the amount of $675,000 for Bank customer M.K. and then approved a $1.7 million loan for the benefit of M.K. in order to conceal the unsecured draw and to pay other Bank borrowers' delinquent loans. Yates approved the unsecured draw.

3. <u>Straw Buyer Purchase.</u> From October 2010 through May 2011, Heine and Yates recruited a Bank employee, Daniel Williams ("Williams"), to facilitate a straw buyer purchase of real property located at 952 A Avenue, Lake Oswego, Oregon 97034 (the "A Avenue Property") for the purpose of concealing a loss to the Bank. Heine and Yates gave Williams two checks totaling $267,727.89 from the Bank's cash account to purchase the A Avenue Property. Yates falsely represented in transactional documents that Williams funded the purchase personally.

4. <u>Other Real Estate Owned ("OREO") Properties Sold to Bank Customer R.C.</u> From March 2010 through June 2013, Heine and Yates removed two properties from the Bank's OREO account after the properties were sold to a Bank borrower, R.C., even though the sales did not meet the requirements to remove the properties from the account. Heine and Yates did not require R.C. to make any down payment and provided R.C. with full financing from the Bank for both properties. As a result of the transactions, the properties were no longer reported on the Call Reports as OREO assets. On January 24, 2011, FDIC examiners questioned the validity of the removal of the properties from the Bank's OREO account and advised Heine and Yates that the purchases did not meet the minimum equity requirements needed to remove the properties. Yates advised the FDIC examiners that R.C. was going to make down payments for the two homes, which would then permit the Bank properly to remove the properties from the OREO account. On January 31, 2011, Yates prepared two memos to each of the R.C. loan files that falsely stated R.C. was willing to make a 15 percent down payment on the properties. Heine and Yates represented that R.C. paid down payments for the properties, when in fact no payment was received by the Bank.

5. <u>Misrepresentations to Shareholders.</u> From September 2009 through September 2014, Heine and Yates caused the Bank to misrepresent to the Bank's shareholders the Bank's "Texas Ratio," which is a measure of the Bank's credit

troubles and potential for bank failure, thus misrepresenting the true extent of the Bank's delinquent loans.

ECF 1 at 4-11, ¶¶ 13-26. The Indictment further alleges that Heine and Yates knowingly made 26 false entries in the books, reports, and statements of the Bank with the intent to injure and defraud the Bank. Heine and Yates allegedly did so by omitting material information about the true status and condition of loans and assets from the Call Reports and reports to the Board. *Id.* at 12-14.

The Indictment also names Geoffrey Walsh ("Walsh") as a person who played a role in the alleged conspiracy. Walsh previously was the Senior Vice President of Lending at the Bank. In May 2012, the Bank, acting through Heine, terminated the employment of Walsh for cause, in part based on Walsh's alleged misconduct concerning lending practices. In July 2013, Walsh was indicted in a separate case and charged with conspiracy to commit wire fraud, wire fraud, and conspiracy to make false entries in bank records, among other charges. *United States v. Walsh*, Case No. 3:13-cr-00332-SI-1 (D. Or.) ("*Walsh* Criminal Action"). On July 22, 2015, Walsh pleaded guilty to certain charges alleged in a superseding indictment and second superseding information. In Walsh's plea agreement, he accepted responsibility for his role in many of the same acts described in the Indictment against Heine and Yates. Walsh is awaiting sentencing.

## STANDARDS

### A.  Pretrial Disclosure of Expert Testimony in a Criminal Case

Rule 16 of the Federal Rules of Criminal Procedure governs pretrial discovery in a criminal case by both the government and a defendant. Rule 16(a)(1)(G) states:

> *Expert Witnesses*. At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its *case-in-chief* at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's

> request, give to the defendant a written summary of testimony that
> the government intends to use under Rules 702, 703, or 705 of the
> Federal Rules of Evidence as evidence *at trial* on the issue of the
> defendant's mental condition. *The summary provided under this
> subparagraph must describe the witness's opinions, the bases and
> reasons for those opinions*, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G) (emphasis added). Rule 16(b)(1)(C) provides:

> *Expert Witnesses*. The defendant must, at the government's
> request, give to the government a written summary of any
> testimony that the defendant intends to use under Rules 702, 703,
> or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
> > (i) the defendant requests disclosure under
> > subdivision (a)(1)(G) and the government complies; or
> >
> > (ii) the defendant has given notice under Rule 12.2(b) of an
> > intent to present expert testimony on the defendant's mental
> > condition.
>
> This summary must describe the witness's opinions, the bases and
> reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C). Rule 16(d)(1) provides, in relevant part:

> *Protective and Modifying Orders*. At any time the court may, for
> good cause, deny, restrict, or defer discovery or inspection, or
> grant other appropriate relief. . . .

Fed. R. Crim. P. 16(d)(1).

As explained by the Advisory Committee on Rules, the purpose of these provisions are

> to minimize surprise that often results from unexpected expert
> testimony, reduce the need for continuances, and to provide the
> opponent with a fair opportunity to test the merit of the expert's
> testimony through focused cross-examination.
>
> * * *
>
> With increased use of both scientific and nonscientific expert
> testimony, one of counsel's most basic discovery needs is to learn
> that an expert is expected to testify. . . . This is particularly
> important if the expert is expected to testify on matters which
> touch on new or controversial techniques or opinions. The
> amendment is intended to meet this need by first, requiring notice
> of the expert's qualifications which in turn will permit the

> requesting party to determine whether in fact the witness is an
> expert within the definition of Federal Rule of Evidence 702. Like
> Rule 702, which generally provides a broad definition of who
> qualifies as an "expert," the amendment is broad in that it includes
> both scientific and nonscientific experts. . . . The rule does not
> extend, however, to witnesses who may offer only lay opinion
> testimony under Federal Rule of Evidence 701. *Nor does the
> amendment extend to summary witnesses who may testify under
> Federal Rule of Evidence 1006 unless the witness is called to offer
> expert opinions apart from, or in addition to, the summary
> evidence.*
>
> *Second, the requesting party is entitled to a summary of the
> expected testimony.* This provision is intended to permit more
> complete pretrial preparation by the requesting party. For example,
> this should inform the requesting party whether the expert will be
> providing only background information on a particular issue or
> whether the witness will actually offer an opinion. . . .
>
> *Third, and perhaps most important, the requesting party is to be
> provided with a summary of the bases of the expert's opinion.* . . .

Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment (emphasis added).

## B.  Admissibility of Expert Testimony

The United States Court of Appeals for the Ninth Circuit has discussed the standard

under which a district court should consider the admissibility of expert testimony. *City of

Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014). As explained by the Ninth Circuit:

> Rule 702 of the Federal Rules of Evidence provides that expert
> opinion evidence is admissible if: (1) the witness is sufficiently
> qualified as an expert by knowledge, skill, experience, training, or
> education; (2) the scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the evidence or
> to determine a fact in issue; (3) the testimony is based on sufficient
> facts or data; (4) the testimony is the product of reliable principles
> and methods; and (5) the expert has reliably applied the relevant
> principles and methods to the facts of the case. Fed. R. Evid. 702.
>
> Under *Daubert* [*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579
> (1993)] and its progeny, including *Daubert II* [*Daubert v. Merrell
> Dow Pharms, Inc.*, 43 F.3d 1311 (9th Cir. 1995)], a district court's
> inquiry into admissibility is a flexible one. *Alaska Rent-A-Car, Inc.
> v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In

evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70.

The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id.; see also Primiano*, 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted); *see also Barabin*, 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.

*Id.* at 1043-44 (alterations in original).

## DISCUSSION

The government provided notice that it intends to call Paul Worthing as an expert witness at trial. ECF 377. Mr. Worthing is an Assistant Regional Director of the FDIC. The government also provided notice that it intends to call Glenese Klein to present summary evidence at trial. *Id.* Ms. Klein is a Financial Forensic Accountant with the Federal Bureau of Investigation ("FBI"). In its notice, the government explained that although it does not designate Ms. Klein as an expert witness, in order to avoid any potential misunderstanding or confusion, the government is providing a summary of a portion of her expected testimony as well as a statement of her qualifications. Defendant Heine objects to the testimony of both Mr. Worthing and Ms. Klein and argues that their testimony should be precluded. ECF 407. Defendant Yates joins many of the objections of Defendant Heine and further argues that the testimony of Mr. Worthing and Ms. Klein, if allowed, should be limited. ECF 521; ECF 526. The government responded to these objections (ECF 534), and both Defendants replied. ECF 538 (Defendant Heine's Reply); ECF 537 (Defendant Yates's Reply). In subsection (A) below, the Court addresses Defendants' objections to the government's two disclosed witnesses.

Defendant Yates provided notice that she intends to call three people as expert witnesses at trial: Mark C. Riley; David S. Porter; and Dr. Daniel Reisberg. ECF 515 (amended notice); *see also* ECF 380 (original notice). Mr. Riley has worked in the banking industry, including as a former bank chief executive officer. Mr. Porter is a certified public accountant. Dr. Reisberg is the Patricia & Clifford Lunneborg Professor of Psychology at Reed College and has published extensively in the field of memory and cognition. Defendant Heine objects to the testimony of all three witnesses, Mr. Riley, Mr. Porter, and Dr. Reisberg. ECF 407 (objection to original notice); ECF 524 (objection to amended notice). Although the government initially gave notice of its intent to object to the testimony of these three witnesses (ECF 406), the government now objects

only to the testimony of Dr. Reisberg and has filed a motion *in limine* to exclude his testimony.[2] ECF 525. In subsection (B) below, the Court addresses Heine's objections to Yates's proposed expert testimony from Mr. Riley, Mr. Porter, and Dr. Reisberg and the government's objection to Yates's proposed expert testimony from Dr. Reisberg.

Finally, Defendant Heine provided notice that he intends to call Brian H. Kelley and John Lyngaas as expert witnesses at trial. ECF 378 (Lyngaas); ECF 379 (Kelley); ECF 516 (Kelley Amended Notice). Mr. Kelley has worked in the banking industry for more than 30 years. Mr. Lyngaas is a certified public accountant with more than 32 years of experience in the financial services industry. Although the government initially gave notice of its intent to object to the testimony of these two witnesses (ECF 406), the government now objects only to the testimony of Defendant Yates's expert Dr. Reisberg. In addition, Defendant Yates offers no objections to the two expert witnesses proffered by Defendant Heine. Thus, the Court does not address further Defendant Heine's notices regarding Mr. Lyngaas or Mr. Kelley.

## A. The Government's Proffered Witnesses

### 1. Paul Worthing, Assistant Regional Director, FDIC

According to the government's summary of expert testimony, Mr. Worthing has been employed by the FDIC for more than 26 years, was appointed Assistant Regional Director in 2010, currently oversees 81 FDIC-insured financial institutions in Alaska, Oregon, and Washington, and oversees examination operations for the Seattle and Portland offices. The government disclosures that Mr. Worthing will testify regarding, among other things: (a) the FDIC and its role and responsibilities; (b) the FDIC's expectations regarding the responsibilities of chief executive officers, chief financial officers, and chief operations officers of financial

---

[2] The Court treats the parties' objections as motions *in limine* and *vice versa*.

institutions regulated by the FDIC; (c) "Safety and Soundness" examinations conducted by the FDIC; (d) Call Reports; (e) Other Real Estate Owned ("OREO"); and (f) a "Memorandum of Understanding" entered into between the FDIC and the Bank in 2010 and related supervisory next steps. ECF 377.

In his objections, Defendant Heine argues: (1) Mr. Worthing is unqualified to testify regarding certain accounting matters and matters concerning foreclosures; (2) Mr. Worthing's proffered testimony "assumes the truth" of the allegations contains in the indictment; and (3) much of Mr. Worthing's proffered testimony is irrelevant and unfairly prejudicial, requiring its exclusion under Rule 403 of the Federal Rules of Evidence. ECF 407. Defendant Yates joins many but not all of Heine's objections. ECF 521.

Regarding Mr. Worthing's qualifications, the government acknowledges that Mr. Worthing is not a certified public account but states that he was a commissioned bank examiner for the FDIC for more than 10 years before being promoted to his current supervisory position. ECF 534. The government adds that Mr. Worthing will explain that it takes approximately four to five years of on-the-job training to become a commissioned bank examiner. Further, before becoming a bank examiner with the FDIC, Mr. Worthing took many college-level accounting courses, passed an entry-level accounting examination, and received extensive additional accounting training before being permitted even to begin examiner training. He also was required to work in the field under other commissioned examiners and to successfully pass a certification test that included bank finances, Call Reports, and other regulatory documents. Mr. Worthing also is a member of the oversight body of the Federal Financial Institutions Examination Council ("FFIEC"), where he reviews the course and educational offerings provided to FDIC examiners. The Court finds that Mr. Worthing is

sufficiently qualified as an expert by knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702.

Regarding Heine's argument that Mr. Worthing's proffered testimony "assumes the truth" of certain matters alleged in the indictment, the government responds that an expert is permitted to render opinions based on hypothetical questions. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("[T]he use of leading, hypothetical questions to elicit expert opinions is entirely appropriate."); *see also* Fed. R. Evid. 703. Thus, Heine's general objection is without merit. To the extent that Heine objects to the particular phrasing of a hypothetical question that may be put to Mr. Worthing, such an objection is premature.

Regarding Defendants' argument that much of Mr. Worthing's proferred testimony is either irrelevant or excludable under Rule 403 of the Federal Rules of Evidence, those arguments are without merit. The government asserts that Mr. Worthing's testimony is relevant to prove Defendants' alleged motivation to mislead as well as the materiality of Defendants' alleged misrepresentations and omissions. The Court agrees.

Finally, Yates argues in her reply:

> Expert testimony concerning Mr. Worthing's expectations for bank executives in the performance of their duties does not make it more or less probable that Ms. Yates had the requisite knowledge or intent for the alleged crimes. Mr. Worthing's proposed testimony will not inform jurors regarding Ms. Yates's actual knowledge or intent, if any, as it relates to the charged conduct. Rather, it would create a false basis on which the jury may view Ms. Yates's general performance as CFO through the lens of Mr. Worthing's "expectations" and wrongly conclude that a failure to meet those expectations somehow equates to criminal culpability. *See United States v. Wolf*, 820 F.2d 1499, 1504–05 (9th Cir. 1987) (holding that the government's use of regulatory standards to establish criminal culpability "impermissibly tainted" the prosecution's case).

ECF 537 at 4. This argument appears to be directed at two specific areas of proffered testimony

from Mr. Worthing. First, the government states that

> Mr. Worthing will testify that Other Real Estate Owned (OREO)
> is, generally, foreclosed assets owned by a bank, why and where
> these assets must be disclosed in Call Reports and that a bank's
> OREO provides regulators and others information about the bank's
> financial well-being. Mr. Worthing will testify about the
> requirements for property to be designated as OREO and the FDIC
> qualifications for a financial institution to remove property as
> OREO. Mr. Worthing will opine that the transactions involving A
> Avenue and R.C., as described in the Indictment and both
> designated and removed as OREO, were not properly reported on
> The Bank of Oswego's Call Reports, during the pertinent time
> periods. Specifically, the A Avenue property should not have been
> categorized as OREO at all as soon as the lender in first position
> foreclosed on the property, and the R.C. properties should not have
> been removed as OREO properties on the Bank of Oswego's Call
> Reports when purchased by R.C. *The bases of his opinions are*
> *FDIC rules and regulations*, the Call Report instructions,
> accounting principles, such as Statement of Financial Accounting
> Standards No. 66 ("FAS 66"), and Mr. Worthing's training and
> experience.

ECF 377 at 4-5 (emphasis added). Second, the government states that

> Mr. Worthing will also testify about the requirement to report loan
> delinquencies on Call Reports. Mr. Worthing will testify what
> types of loan delinquencies must be disclosed, where they should
> be disclosed on the Call Report, and that loan delinquencies
> provide information about the bank's financial well-being. *Mr.*
> *Worthing will opine that it is against FDIC rules, regulations and*
> *policy to omit loan delinquencies from the Call Report* where, as
> described in the Indictment, the bank used money from other
> sources to make a payment against a customer's loan to make it
> current, but in fact the borrower still owes those amounts to the
> bank. The basis of this opinion is FDIC rules and regulations, Call
> Report instructions, accounting principles, and Mr. Worthing's
> training and experience.

*Id.* at 5 (emphasis added).

In *United States v. Wolf*, 820 F.2d 1499 (9th Cir. 1987), the Ninth Circuit reversed in part

a criminal conviction on several counts of misapplying bank funds in violation of 18 U.S.C.

§ 656 and making false entries in bank records in violation of 18 U.S.C. § 1005, among other

charges. During trial, a bank examiner called by the government testified that Federal Reserve

Board Regulation O requires approval of a majority of a bank's board of directors to approve

loans made to bank officers. The indictment charged that Wolf committed a criminal act by

failing to disclose on loan applications that he was the ultimate beneficiary on certain loans. The

loan applications did not ask for such information and neither does any criminal statute. The

government's theory, however, was that Wolf committed criminal violations of Sections 656

and 1005 by failing to disclose a material fact on a bank application. According to the Ninth

Circuit, "the situation created a serious risk that the jury would find Wolf guilty of criminal

misapplication and false entry because he failed to comply with Regulation O." *Wolf*, 820 F.2d

at 1505.

At oral argument, the government invited the Court to review *United States v. Eriksen*,

639 F.3d 1138 (9th Cir. 2011), among other cases. In *Eriksen*, the Ninth Circuit noted that *Wolf*

addressed "the dangers of 'bootstrapping' a civil violation into a criminal one." *Eriksen*, 639

at 1149. The Ninth Circuit stated:

> [In *Wolf*,] [w]e faulted the government for basing its
> misapplication charges on a civil banking regulation that imposes a
> duty on bank employees to inform the bank's board of directors
> about the purpose of a loan. During Wolf's trial, the government's
> expert witness testified that the defendant's failure to disclose he
> was a beneficiary of some of the loans he disbursed violated
> Federal Reserve Regulation O (12 C.F.R. § 215). We held that the
> references to the Regulation were impermissible:
>
> > Unlike references to [other civil violations which occurred
> > during the trial], the references to Regulation O cannot be
> > dismissed as being simply background information. The
> > references were a key part of the government's case on the
> > misapplication and false entry counts . . . .
> >
> > To supply the missing element of the false entry and
> > misapplication charges, the government turned to

> Regulation O. Through its expert witness the government established that Regulation O imposed a duty on [the defendant] to inform the bank's directors that he had an interest in the loans.... In sum, the government used Regulation O to supply a crucial element of the misapplication and false entry charges.

*Eriksen*, 639 F.3d at 1149-50. In distinguishing *Wolf* from *Eriksen*, the Ninth Circuit explained:

> Thus, under the logic of *Christo* and *Wolf*, it is impermissible to use the violation of a civil statute to *ipso facto* "supply a crucial element" of a criminal offense.
>
> Contrary to *Christo* and *Wolf*, the Plan Asset Regulation played an inconsequential or, more likely, no role in Defendants' convictions.

*Id*. at 1150.

In the pending case, the Indictment charges Heine and Yates with conspiring to commit bank fraud in violation of 18 U.S.C. § 1349 and making false bank entries, reports, and transactions in violation of 18 U.S.C. § 1005. ECF 1. The government argues that it can prove these charges with evidence that Defendants knowingly made material misrepresentations and failed to disclose material information on the Bank's Call Reports, among other places. In order to avoid the issues identified in *Wolf*, the jury will need to be carefully instructed that Defendants are not being criminally tried for violating FDIC rules, regulations, or expectations, but only for allegedly making false entries and reports and conspiring to commit bank fraud. *Wolf* does not require the exclusion of Mr. Worthing's proffered testimony.

### 2.  Glenese Klein, Financial Forensic Accountant, FBI

According to the government's summary of expert testimony, Ms. Klein will not be offering any expert opinion testimony. Instead, she will present only summaries of voluminous documents, which is permitted under Rule 1006 of the Federal Rules of Evidence. She will present summaries that show, among other things, the dates that various transfers were made to

cover loan delinquencies by Bank customers, including from which accounts those transfers were made and to which accounts (or for whose benefit) those transfers were made, as set forth in the relevant documents received in evidence. Ms. Klein also will testify that according to the Bank's Call Reports and other records, these loan delinquencies were no longer being reported by the Bank. ECF 377. In other words, the summaries presented by Ms. Klein will "follow the money." As explained by the Advisory Committee on Rules, the expert disclosures required under Rule 16 do not "extend to summary witnesses who may testify under Federal Rule of Evidence 1006 unless the witness is called to offer expert opinions apart from, or in addition to, the summary evidence." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment.

Among other things, Heine argues that a summary witness must lay a proper foundation to establish that the summary is accurate. The Court agrees. Heine also argues that for Ms. Klein to present a summary that purportedly shows that certain delinquencies were no longer being reported on the records of the Bank, she would need to review "every Bank of Oswego document in existence." ECF 407 at 25 (internal 18). The Court disagrees. Heine's objection goes to weight, not admissibility, and Defendants are free to inquire on cross examination what records Ms. Klein did not review and to argue during closing the implications of her responses.

The government, however, must disclose its summary exhibits to Defendants when the government discloses its trial exhibits not later than March 13, 2017. *See* ECF 434 at 4. These disclosures should be sufficiently annotated to enable Defendants to confirm or refute their accuracy. If either Defendant moves *in limine* to exclude any summary exhibit on the grounds that it is inaccurate, the Court will consider that argument and any related evidence presented by the parties at a pretrial conference. If no Defendant presents affirmative evidence that a particular summary entry is inaccurate, however, the Court anticipates receiving that summary in evidence,

PAGE 16 – OPINION AND ORDER

and Defendants' argument that the witness might not have reviewed every Bank document will be held simply to go to the weight of the summary exhibit and not to its admissibility.

## B.  Defendant Yates's Proffered Witnesses

### 1.  Mark C. Riley and David S. Porter

According to Defendant Yates's amended notice, Mr. Riley will offer expert testimony regarding the characteristics of a "*de novo* community bank," the norms of corporate governance (including the role of a Chief Financial Officer and other persons in management positions), Defendant Yates's specific responsibilities and the responsibilities of other Bank officers given the Bank's "organizational structure," and his opinion that Defendant Yates's performance as Chief Financial Officer was "consistent with professional standards for a person in her position under the circumstances." ECF 515 at 2. In addition, according to Defendant Yates, Mr. Riley will testify about Bank operations, the responsibilities and duties of specific Bank officers related to the specific transactions that are the subject of the government's allegations, the types of information that would be material to the Bank's board, a bank's regulatory compliance obligations and the role of the FDIC, appropriate measures of a bank's financial health, applicable banking standards in relation to the specific transactions described in the Indictment, and the effect that a "rogue" bank official can have on a small community bank, including the "impact of Geoff Walsh's fraud on the Bank of Oswego, its operation, and its officers and employees." *Id.* at 5. The government does not object to this summary of expected testimony. ECF 525.

Also according to Defendant Yates's amended notice, Mr. Porter, a certified public accountant, will offer expert testimony regarding: the role of a Chief Financial Officer and the nature of the relationship between an officer of such an entity and that entity's independent accountants; the role that the accounting firm Moss Adams placed in the performance of

Defendant Yates's duties and for the Bank generally; the process through which a Chief

Financial Officer gathers and receives financial information for the preparation of financial

documents; how Defendant Yates gathered and received information for the preparation of

financial documents; the internal controls within the Bank and their effect on financial reporting,

appropriate measures of a bank's financial health, the loan originations at the Bank, the

appropriate accounting for the specific transactions described in the Indictment, and the general

structure, operation, and hallmarks of a conspiracy to commit a financial fraud; and his opinion

that Defendant Yates's alleged conduct is "not indicative of such a conspiracy and does not

follow the pattern expected in such a scheme." ECF 515. The government does not object to this

summary of expected expert testimony. ECF 525.

Defendant Heine objects to the testimony of both Mr. Riley and Mr. Porter. Heine argues

that their testimony will "displace the jury's function by improperly dictating the legal

conclusion it should reach." ECF 407; ECF 524. Heine also argues that the testimony of these

two witnesses  "improperly opines that Defendant Yates did not possess the requisite intent to

commit the acts charged in the Indictment." *Id*. According to Heine, this testimony would violate

Rule 704(b) of the Federal Rules of Evidence. Among other cases, Heine relies upon *United*

*States v. Morales*, 108 F.3d 1031 (9th Cir. 1997), which held:

> A prohibited "opinion or inference" under Rule 704(b) is
> testimony from which it necessarily follows, if the testimony is
> credited, that the defendant did or did not possess the requisite
> *mens rea*.

*Morales*, 108 F.3d at 1037.

In response, Yates argues that neither Mr. Riley nor Mr. Porter will "provide any legal

conclusions." ECF 533 at 5. Instead, she analogizes the proffered testimony to expert testimony

on the standard of care in negligence litigation, where experts routinely provide opinions both

about the standard of care and whether a defendant's conduct fell above or below that standard. In addition, Yates assures the Court that neither Mr. Riley nor Mr. Porter will offer "testimony on Ms. Yates's or Mr. Heine's state of mind." *Id.* at 7. With these acknowledgments and concessions, it is not the case that whether any Defendant did or did not possess the requisite *mens rea* will necessarily follow from Yates's proffered expert testimony. Thus, Heine's objections to the proffered testimony of Mr. Riley and Mr. Porter are not well taken.

### 2.  Dr. Daniel Reisberg

According to Defendant Yates's amended notice, Dr. Reisberg will offer expert testimony regarding the functioning of human memory. He will not, however, according to Defendant Yates, offer any opinions regarding the functioning of any particular witness's memory and "will not vouch for any particular witness or comment on his or her credibility." ECF 515 at 14. Instead, describes Yates, "Dr. Reisberg's testimony will be limited to general principles of human memory and cognition." *Id*. Both the government and Defendant Heine object to this summary of expected expert testimony by Dr. Reisberg. ECF 407 (Heine's objections to Yates's original notice); ECF 524 (Heine's objections to Yates's amended notice); ECF 525 (Government's motion *in limine*). Yates responded (ECF 533), and Heine and the government replied. ECF 540 (Heine); ECF 541 (Government). In addition, the Court allowed Yates to file a sur-reply, which she did. ECF 546 (Yates's sur-reply).

The Court finds that Dr. Reisberg is qualified as an expert in the field of human memory and cognition. The Court is uncertain, however, whether and, if so, how Dr. Reisberg's specific testimony in this case will be helpful to the jury. To be admissible, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Among other things, the trial court must be satisfied that the expert testimony is "relevant to the task at hand." *City of Pomona*, 750 F.3d at 1043. In light of the generalities expressed in Yates's

expert witness summary for Dr. Reisberg, the Court is unable to make this determination at this

time.

Indeed, Yates appears to concede this point. According to Yates,

> Despite the government's belief, Ms. Yates does not have the
> burden of naming each witness and fact that will be included in Dr.
> Reisberg's testimony. Even if such a burden existed, compliance
> would be impossible: *Ms. Yates does not and cannot know what
> the trial testimony will in fact be.* For example, Ms. Yates does not
> know what out-of-court statements the government will introduce
> and how those declarants will testify in response. Ms. Yates
> similarly does not know which of her out-of-court statements the
> government will seek to introduce at trial. *Without this
> information, Ms. Yates is not obligated to foreshadow Dr.
> Reisberg's exact testimony*. Ms. Yates is, however, obligated to put
> the government on notice of Dr. Reisberg's areas of testimony,
> qualifications, and how his testimony is potentially relevant. Ms.
> Yates has met this burden.

ECF 533 at 9-10 (emphasis added). The Court disagrees and notes that Rule 16(b)(1)(C) of the

Federal Rules of Criminal Procedure states that a defendant must "describe the witness's

opinions." Yates has not yet done so with sufficient detail to enable the Court to determine

whether Dr. Reisberg's testimony will be helpful to the jury in this case.

Rather than determine at this time, however, whether Dr. Reisberg may testify (and, if so,

on what topics), the Court will defer its ruling until after a preliminary hearing has been held

pursuant to Rule 104 of the Federal Rules of Evidence. Moreover, in light of Yates's position

that she "does not and cannot know what the trial testimony will in fact be" until after it has

occurred, the Court will hold the preliminary hearing under Rule 104 during trial, after the

government has rested its case, and out of the presence of the jury. Finally, because the Court

will not determine whether and, if so, to what extent Dr. Reisberg may testify until sometime

during trial, both the government and Defendant Heine are relieved of any obligation they may

have to provide any summaries of rebuttal expert testimony that may be offered solely to rebut Dr. Reisberg's testimony. *See* Fed. R. Crim. P. 16(d)(1).

## CONCLUSION

Heine and Yates's objections to the government's disclosed expert witnesses (ECF 407 and ECF 521), Heine's objections to Yates's disclosed expert witnesses (ECF 407; ECF 524), and the government's objections to Yate's disclosed expert witness on memory and cognition, Dr. Reisberg (ECF 525) are resolved as stated in this Opinion and Order. Mr. Worthing, Ms. Klein, Mr. Riley, Mr. Porter, Mr. Kelley, and Mr. Lyngaas may testify at trial consistent with this Opinion and Order. The Court defers ruling on the proffered testimony of Dr. Reisberg until after the Court holds a preliminary hearing after the government rests its case at trial. As provided in the Second Trial Management Order (ECF 434), the deadline for filing rebuttal expert witness summaries remains as scheduled for February 27, 2017, although neither the government nor Defendant Heine is required to provide any summaries for expert witnesses whose testimony will be limited to rebutting the expert witness testimony, if allowed, of Dr. Reisberg.

**IT IS SO ORDERED**.

DATED this 2nd day of February, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge