IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DAN HEINE and DIANA YATES**, <br><br> Defendants. | Case No. 3:15-cr-238-SI <br><br> **OPINION AND ORDER** |

Billy J. Williams, United States Attorney, and Claire M. Fay, Michelle Holman Kerin, and Quinn P. Harrington, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the United States of America.

Jeffrey Alberts and Mark Weiner, PRYOR CASHMAN, LLP, 7 Times Square, New York, NY 10036; Caroline Harris Crowne and Michael C. Willes, TONKON TORP, LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendant Dan Heine.

Janet Lee Hoffman, Kelsey R. Jones, Andrew T. Weiner, Katherine Feuer, and Douglas J. Stamm, JANET HOFFMAN & ASSOCIATES, LLC, 1000 S.W. Broadway, Suite 1500, Portland OR 97205; Matthew J. Kalmanson, HART WAGNER, LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant Diana Yates.

**Michael H. Simon, District Judge.**

Defendants Dan Heine ("Heine") and Diana Yates ("Yates") are charged with conspiring to commit bank fraud and making false bank entries, reports, or transactions during the time when they were the two most senior officers of The Bank of Oswego ("Bank"). In this Opinion

and Order, the Court resolves the following motions filed by Defendants Heine and Yates: (1) Defendant Yates's Supplemental Motion to Dismiss (ECF 697); and (2) Defendant Heine's Motion to Vacate the Third Trial Management Order and Compel the Government to Provide Discovery (ECF 699), which Defendant Yates joins (ECF 710). After reviewing these motions, as well as all supporting memoranda and declarations, all memoranda and declarations in opposition, and all reply memoranda and declarations, the Court heard oral argument on April 10, 2017. For the reasons that follow, Defendant Yates's Supplemental Motion to Dismiss (ECF 697) is denied and Defendant Heine's Motion to Vacate the Third Trial Management Order and Compel the Government to Provide Discovery (ECF 699), which Defendant Yates joins (ECF 710), is granted in part and denied in part.

## BACKGROUND

### A. The Underlying Case

Heine and Yates co-founded the Bank in 2004. The Bank is a financial institution engaged in the business of personal and commercial banking and lending. The Bank is headquartered in Lake Oswego, Oregon.[1] Heine served as the Bank's President and Chief Executive Officer ("CEO"). As President and CEO, Heine supervised and managed the Bank's affairs and operations. Heine also was a member of the Bank's Board of Directors ("Board"). Heine left the Bank in September 2014. Yates served as the Bank's Executive Vice President and Chief Financial Officer ("CFO"). As CFO, Yates was responsible for ensuring the Bank's compliance with federal and state regulations. Yates also was the Secretary of the Board. Yates resigned from the Bank on March 22, 2012.

---

[1] On August 12, 2016, the Bank sold loans and other assets to HomeStreet Bank. The Bank of Oswego continues to exist as a corporate entity, but has relinquished its banking charter and now operates as Oswego Resolution.

Both Heine and Yates were responsible for ensuring that the Bank operated in a sound and safe manner and for keeping the Board informed about the Bank's financial condition and the adequacy of the Bank's policies, procedures, and internal controls. Additionally, Heine and Yates were members of the Bank's Internal Loan Committee ("ILC"). The duties of the ILC included approving loans that were outside the authority of individual Bank loan officers, ensuring the quality of the Bank's loan portfolio, and minimizing risks in that portfolio.

The Bank's deposits are insured by the Federal Deposit Insurance Corporation ("FDIC"), and the Bank is subject to regular monitoring and examinations by the FDIC. For example, federal regulations require the Bank to file with the FDIC what are commonly known as "Call Reports" on a quarterly basis. A Call Report contains information about the Bank's financial position and is divided into a number of schedules. One of the schedules, known as "Schedule RC-N," requires disclosure of the correct value of outstanding loans.

On March 9, 2017, a federal grand jury returned a 19-count Superseding Indictment against both Heine and Yates, alleging misconduct related to their activities with the Bank. ECF 623.[2] The Superseding Indictment charges Heine and Yates with one count of conspiring to commit bank fraud, in violation of 18 U.S.C. § 1349, and 18 counts of making false bank entries, reports, or transactions, in violation of 18 U.S.C. §§ 1005 and 2.[3] The Superseding Indictment alleges that between September 2009 and September 2014, Heine and Yates conspired to defraud the Bank through materially false representations and promises. The Superseding Indictment further alleges that one of the purposes of the conspiracy was to conceal the true financial

---

[2] The Superseding Indictment supersedes the original Indictment (ECF 1) that was returned by a federal grand jury against Defendants Heine and Yates on June 23, 2015.

[3] Both the Superseding Indictment and the original Indictment also contain forfeiture allegations.

condition of the Bank from the Board, the Bank's shareholders, the Bank's regulators (including the FDIC), and the public. According to the Superseding Indictment, Heine and Yates reported false and misleading information about loan performance, concealed information about the status of foreclosed properties, made unauthorized transfers of Bank proceeds, and failed to disclose material facts about loans to the Board, shareholders, and regulators, all in an effort to conceal the Bank's true financial condition.

The Superseding Indictment against Heine and Yates alleges the following five schemes that purportedly advanced the alleged conspiracy's purpose of falsely creating a healthier appearance of the Bank's finances than actually existed:

1. Payments Made on Delinquent Loans.  Heine and Yates made payments, using Bank proceeds, on behalf of Bank customers who were delinquent on their loans. The payments sometimes were made without the knowledge or consent of the Bank's customer. The payments were made so that the delinquent loans would not appear in the Call Reports. On March 31, 2011, Yates transferred funds from a Bank customer's business checking account to the customer's personal loan account, which was delinquent, without the customer's consent. Heine and Yates's alleged practice of paying delinquent loans with Bank or other proceeds hid delinquent loans that otherwise would have been included in the Call Reports and reported to the Board.

2. Wire Transfer and Loan to Bank Customer M.K.  Between July 2010 and September 2010, Heine and Yates permitted to be made an unsecured draw in the amount of $675,000 for Bank customer M.K. and then approved a $1.7 million loan for the benefit of M.K. in order to conceal the unsecured draw and to pay other Bank borrowers' delinquent loans. Yates approved the unsecured draw.

3. Straw Buyer Purchase (A Avenue Property).  From October 2010 through May 2011, Heine and Yates recruited a Bank employee, D.W., to facilitate a straw buyer purchase of real property located at 952 A Avenue, Lake Oswego, Oregon 97034 ("A Avenue Property") for the purpose of concealing a loss to the Bank. Heine and Yates gave D.W. two checks totaling $267,727.89 from the Bank's cash account to purchase the A Avenue Property. Yates falsely represented in transactional documents that D.W. funded the purchase personally.

4. Other Real Estate Owned ("OREO") Properties Sold to Bank Customer R.C.  From March 2010 through June 2013, Heine and Yates removed two properties from the Bank's OREO account after the properties were sold to a Bank borrower,

R.C., even though the sales did not meet the requirements to remove the properties from the account. Heine and Yates did not require R.C. to make any down payment and provided R.C. with full financing from the Bank for both properties. As a result of the transactions, the properties were no longer reported on the Call Reports as OREO assets. On January 24, 2011, FDIC examiners questioned the validity of the removal of the properties from the Bank's OREO account and advised Heine and Yates that the purchases did not meet the minimum equity requirements needed to remove the properties. Yates advised the FDIC examiners that R.C. was going to make down payments for the two homes, which would then permit the Bank properly to remove the properties from the OREO account. On January 31, 2011, Yates prepared two memos to each of the R.C. loan files that falsely stated R.C. was willing to make a 15 percent down payment on the properties. Heine and Yates represented that R.C. paid down payments for the properties, when in fact no payment was received by the Bank.

5. <u>Misrepresentations to Shareholders.</u> From September 2009 through September 2014, Heine and Yates caused the Bank to misrepresent to the Bank's shareholders the Bank's "Texas Ratio," which is a measure of the Bank's credit troubles and potential for bank failure, thus misrepresenting the true extent of the Bank's delinquent loans.

ECF 623 at 4-11, ¶¶ 13-26. The Superseding Indictment further alleges that Heine and Yates knowingly made 18 false entries in the books, reports, and statements of the Bank with the intent to injure and defraud the Bank. Heine and Yates allegedly did so by omitting material information about the true status and condition of loans and assets from the Call Reports and reports to the Board. *Id*. at 12-13.

The Superseding Indictment also names Geoffrey Walsh ("Walsh") as a person who played a role in the alleged conspiracy. Walsh was the former Senior Vice President of Lending at the Bank. *Id*. at ¶ 13. On May 2, 2012, the Bank, acting through Heine, terminated the employment of Walsh for cause, in part based on Walsh's alleged misconduct concerning lending practices. On June 11, 2012, Heine called the Federal Bureau of Investigation ("FBI") to report alleged criminal activity by Walsh. In July 2013, a federal grand jury indicted Walsh in a separate case for conspiracy to commit wire fraud, wire fraud, and conspiracy to make false entries in bank records, among other charges. *United States v. Walsh*, Case No. 3:13-cr-00332-

SI-1 (D. Or.) ("*Walsh* Criminal Action"). On July 22, 2015, Walsh pleaded guilty in the *Walsh* Criminal Action to certain charges alleged in a superseding indictment and second superseding information. In Walsh's plea agreement, he accepted responsibility for his role in many of the same acts described in the Superseding Indictment against Heine and Yates. Walsh is awaiting sentencing.

**B. Materials Seized from Geoffrey Walsh and Held for Inspection at the FBI**

In partial support of Yates's motion to dismiss, Yates's counsel asserts in a declaration:

> In August 2016, the U.S. attorney's office moved some of Geoff Walsh's files from the FBI's office to their own office. *Based on a misrepresentation*, my office understood that the government had copied and produced the relevant information to defense counsel from those files. It had not. Following counsel's visit to the U.S. attorney's office in February 2017, the government produced additional discovery from these loan files. Ms. Yates received this discovery on March 2, 2017.

ECF 711 at ¶ 18 (emphasis added).

Yates, through counsel, explains that she is referring to the following comment made by the Government during a status conference with the Court on September 18, 2015:

> Your Honor, I believe that we've produced all of the discovery that we had, which was significant, in both this case as well as the *Walsh* case to both defendants.

ECF 125 at 4:9-11. Eleven months later, on August 30, 2016, the Government sent defense counsel a letter, enclosing certain handwritten notes made by Walsh. In that letter, Government wrote:

> 2. Handwritten Notes Beginning at BANK266097
>
> These are handwritten notes from paperwork maintained by Geoffrey Walsh. *The original, as with all other original 1B evidence from the FBI search warrants and original files obtained by grand jury subpoena from Geoffrey Walsh's office at the Bank, are available for your inspection. Early in the case, we notified counsel for both parties that the original files were available for*

PAGE 6 – OPINION AND ORDER

> inspection. Some of that material, what we considered relevant information, was copied and produced in our discovery productions. Other documents have been available for your review. As of this date, other than a request to inspect an original of a document made by Defendant Yates, we have not received any requests to review these files.
>
> Recently, we moved some of the files, eight files that relate to the allegations from the indictment, from the FBI to this office. Those files are the individual loan files that Geoffrey Walsh kept at his home or his storage unit that were seized pursuant to the search warrant or originals from his office at the Bank. For example, the indictment alleges that an improper payment was made on C.D.'s personal loan at count 17. One of the loan files is a loan file kept by Geoffrey Walsh for C.D.
>
> In our preparation for trial, we are reviewing some of those files again. We produced the document you reference in your letter because we may use it at trial and it relates to A Avenue. We want to remind you that all of the original files are still available for your review. If you wish to review the files moved to this office, or any other original files, please let us know.

ECF 691-1 (emphasis added).

Further, on February 15, 2017, the Government again wrote to counsel for Heine and Yates, among others. The Government stated:

> Enclosed please find one disc containing additional discovery in the above matters . . . .
>
> Other than the transcript of phone calls, the documents in this production are copies of search warrant materials stored with the FBI. *As we have noted in prior correspondence, including our August 30, 2016 correspondence, these documents have been available for your inspection. We are producing copies of these particular documents because they may be used as exhibits at trial.*

ECF 720-1 at 1 (emphasis added).

**C. Emails Produced by the Bank to the FDIC, which the Government Incorrectly Later Assumed Were Already Included Within the Bank's Email Production to Defendants**

As part of the FDIC's examination and civil investigation of the Bank, the FDIC obtained an electronic copy of many of the Bank's internal emails in July 2012. By early August 2012, the

FDIC's Investigation Specialist Janie Spaulding ("Spaulding") asked FDIC-OIG Special Agent Michael Wixted ("Wixted") whether he would be "interested in helping review the Walsh/Yates emails." ECF 732 at 4 (Jones Decl., Ex. 1). He replied that he would. *Id*. By September 4, 2012, Spaulding provided to Wixted on a thumb drive a copy of the Bank's recently-gathered internal emails. ECF 732 at 6 (Jones Decl., Ex. 3). The FDIC maintained these emails on an internal system called "Clearwell." The emails that were gather by the FDIC from the Bank in 2012 and provided to Wixted by Spaulding on a thumb drive later that year are sometimes referred to by the parties or the Court as the "FDIC emails," the "FDIC thumb drive," or the "Clearwell emails."

In addition, during its investigation of the *Walsh* matter and, later, this case, the Government (*i.e.*, the prosecution team) collected emails directly from the Bank through grand jury subpoenas. Although FDIC-OIG Special Agent Wixted has been working on the examination or civil side of the FDIC (specifically with Spaulding) since the summer of 2012, by the summer or early fall of 2013, Wixted had begun to work closely with the FBI on its criminal investigation. ECF 513 at 14, 19.

It wasn't until late 2015, however, the prosecution team from the U.S. Attorney's Office first learned that that the FDIC had previously provided the FDIC-OIG access to some of the documents gathered by the FDIC, including the Bank's emails collected in July 2012, *i.e.*, the FDIC emails, the FDIC thumb drive, or the Clearwell emails. ECF 720 at 1-2 (Kerin Decl., ¶¶ 2-3). Wixted told the prosecution team that, through the FDIC's Clearwell system, he had access to all or some of the Bank's emails that had been previously obtained by the FDIC. *Id*.

After Heine and Yates were indicted in June 2015, Yates served subpoenas on the Bank, seeking the Bank's internal emails, pursuant to Rule 17(c)(1) of the Federal Rules of Criminal

Procedure. Among other things, Yates demanded a copy of the Bank's server containing email and calendar information for Heine, Walsh, and Yates in .PST format.[4] The Bank objected and moved to quash on several grounds, including the attorney-client privilege.

On March 30, 2016, the Court held a hearing on the Bank's motion to quash. ECF 200. The following day, March 31, 2016, the Court entered its written order, granting in part and denying in part the Bank's motion to quash. ECF 201. The Court ruled that, among other things, the Bank "is directed to provide, in .PST format, a copy of all emails and calendar information from 2007 through 2013 from its server for custodians Dan Heine, Diana Yates, and Geoffrey Walsh, although the Bank may exclude or redact information protected against disclosure by the attorney-client privilege." *Id*. at 32.[5] From time to time thereafter, the Bank and Yates required additional rulings from the Court regarding the scope of the privilege and whether specific documents could be withheld under the attorney-client privilege. The Court reviewed documents *in camera* and rendered rulings.

Yates also had served subpoenas on the FDIC. The FDIC moved to modify the subpoena. On March 24, 2016, the Court directed the FDIC to submit certain materials to the Court for *in*

---

[4] Defendants later issued additional subpoenas to the Bank to add approximately 17 other email users, or email custodians, from the Bank.

[5] At the hearing held on April 10, 2017, the parties and the Bank informed the Court that the Bank previously produced electronic copies of the Bank's email files in a format other than .PST, notwithstanding the Court's Order dated March 31, 2016. The Court does not recall having been made aware of this fact before the recent hearing. Even if the Court was informed of that before April 10, the Court did not previously appreciate the significance of this fact. Because the Bank's email production to the parties was not in .PST format, the process of comparing the FDIC's 2012 copy of the Bank's emails with copies of what the Bank has provided to the parties since this action has begun has been made more difficult. During the hearing on April 10, 2017, the Court ordered the Bank promptly to produce electronic copies of what it had already provided to the parties, but this time in .PST or native format, whichever may best facilitate the prompt comparison of the two databases, *i.e.*, what the FDIC obtained from the Bank in 2012 and what the Bank produced to the parties in this criminal action.

PAGE 9 – OPINION AND ORDER

*camera* review. ECF 189. On April 4, 2016, shortly after the Court ruled on the Bank's motion to quash, the Court vacated its order to the FDIC to submit its materials *in camera* to the Court. ECF 207.

When the prosecution team attended the Court hearing on March 30, 2016, on the Bank's motion to quash Yates's subpoena, the prosecution "believed that the FDIC emails were a duplicate subset of the emails that the Bank would be required to produce." ECF 720 at 2 (Kerin Decl., ¶ 4). On approximately April 15, 2016, the FDIC provided to the prosecution team the emails that the FDIC had previously collected in 2012 from the Bank. *Id*. at ¶ 5. The prosecution team initially thought that its office would need to conduct a review, or filter analysis, of the Bank's emails to remove privileged material, which was expected to be a significant undertaking. *Id*.; *see also* ECF 695 at 37 (Weiner Decl., Ex. 16).

Based on "the complicated nature of the Bank's privilege assertions, the Court's Opinion and Order of March 31, 2016, [the fact] that the Bank intended to do its own privilege review that comported with the Court's orders, and understanding that the defendant's [*sic*] subpoenas were broader in terms of number of users and encompassed more years over the relevant time period, [the prosecution team] believed that the Bank would be producing a duplicate subset of those [FDIC emails] . . . for the relevant time period and that [the Bank] would remove their privileged documents consistent with the Court's orders." ECF 720 at 3 (Kerin Decl., ¶ 6). Because the prosecution "believed that the non-privileged FDIC emails were a duplicate subset for the relevant time period of the production of non-privileged emails from the Bank[,] . . . [the prosecution team] did not believe that the FDIC emails needed to be produced." *Id*. at ¶ 7. Over the next few months, the Bank produced more emails responsive to Defendants' subpoenas, and Yates and the Bank continued to litigate privilege issues. *Id*. at ¶ 8.

As the prosecution team was "preparing for trial, and because we anticipated that the defendants would not agree with authentication of various documents, the government wanted the Clearwell emails that we intended to introduce as exhibits to be replaced with the emails produced by the Bank." *Id*. at ¶ 9.[6] At no time before March 17, 2017, however, did the prosecution team actually access, review, or use the electronically-stored FDIC emails. *Id*. at ¶ 5.

The problem that resulted in the pending motions was discovered by the Government in early to mid-March 2017. As explained by one member of prosecution team:

> In finalizing our exhibit list and the task of replacing these emails, we attempted to replace a Clearwell email involving Geoff Walsh by pulling it from the .pst emails for Mr. Walsh that we received from the Bank pursuant to a grand jury subpoena. During our review, we were not able to locate it in the emails received from the Bank pursuant to grand jury subpoena. This made us concerned that the problem was with the Bank's production of emails and not the technical issues with the government's database. The next business day, we spoke with counsel for the Bank, Casey Nokes. When we explained the situation, including our technical difficulties, he seemed surprised by the possibility that there could be a lapse in document production from the Bank between what was produced in this litigation and the FDIC emails. He asked that the Bank be permitted to locate the Clearwell emails within its own database before we produced the FDIC emails. Because of our ongoing technology problems, this seemed liked a reasonable way to confirm whether the problem was the Bank's production or our unreliable database. As a result, we provided a few emails from the Clearwell system for him to locate within the Bank's production. Within a week, he informed us that the Clearwell emails had not been produced in the Bank's production to the parties and that he could not explain the discrepancy between the two productions.

*Id*. at ¶ 10.

---

[6] As discussed above, the term "Clearwell emails" refers to the set of emails that the FDIC obtained from the Bank in 2012 and that were delivered by Spaulding to Wixted in August or September of 2012. The Government acknowledges that at all times after September 2012, Wixted had access to the Clearwell emails and Wixted become a part of the prosecution team by late summer or early fall of 2013.

Within four days after learning the Bank's response, the prosecution team provided Defendants with electronic copies (by thumb drive) of the FDIC emails, along with Ms. Kerin's cover letter dated March 16, 2017. ECF 700-1. Heine's counsel received that letter and its enclosure of the "FDIC production" (*i.e.*, the FDIC thumb drive, or the FDIC emails) on March 20, 2017. Yates's counsel received that letter and its enclosure of the FDIC emails (or the FDIC thumb drive) also by at least that date.

As explained by the Government in its cover letter to Defendants' counsel, dated March 16:

> In preparing its exhibit list for trial, the government began to search the Bank's production both to defendant Yates and to the government for copies of emails that the government produced in discovery from the Clearwell system. The government encountered great difficulty searching for these emails because the government's database was, and is, unstable. Put simply, searching for emails would frequently cause the database to crash and as a result, our work was significantly hindered for technical reasons. Although the government found some of the emails it produced in discovery from the Clearwell system, the government could not find a number emails in the Bank's productions. The government thereafter contacted the Bank's counsel and informed the Bank of the problem. The government stated that it intended to produce the FDIC thumbdrive given the potentially incomplete production. The Bank asked the government not to produce the thumbdrive without first allowing the Bank to search for the emails in its own production. The government provided a handful of emails to the Bank to allow the Bank to find those emails in its production.
>
> This weekend, the Bank reported that it could not find the emails in its production. The Bank stated that it could not provide an explanation why the emails were not included in its production. The government informed the Bank that it would use the Bank's privilege log to remove emails from the FDIC email collection and would then produce the collection to defendants.
>
> The government is now producing the FDIC collection of emails to defendants. The emails are being produced in their native form and in .PST files, so they are easily searchable. The government believes they are largely duplicative, and most are likely not

> relevant. Nonetheless, the government is producing the FDIC
> collection of emails out of an abundance of caution.

ECF 700-1. Thus, as of March 20, 2017, Defendants received from the Government the FDIC's emails, in native and .PST format, that the FDIC originally obtained from the Bank in 2012. As discussed more fully below, it remains to be seen precisely to what extent these emails are duplicative of what the Defendants have already received directly from the Bank, are irrelevant, or both. To make that determination will require a bit more time and a bit of court-ordered cooperation among all of the parties, including the Bank.

## DISCUSSION

### A. Defendant Yates's Supplemental Motion to Dismiss

Defendant Yates moves for an order dismissing all charges against her based on the Court's supervisory powers. ECF 697. Yates previously moved to suppress several statements that she made to special agents of the FBI during noncustodial interactions, some of which Yates initiated. She also previously moved to suppress statements that she made during her third-party deposition taken by the Bank on May 9, 2013, in a civil lawsuit brought by the Bank against Walsh. The Court held a joint, five-day evidentiary hearing to consider Yates's motion to suppress, along with two motions to suppress filed by Heine. After receiving numerous exhibits and hearing testimony from 12 witnesses, on November 18, 2016, the Court issued its written opinion denying Yates's motion to suppress. ECF 514.[7]

On February 15, 2017, Yates also previously filed a motion to dismiss, arguing both that there had been a violation of her due process rights and that dismissal was warranted under the Court's supervisory powers. ECF 574. On April 7, 2017, the Court denied Yates's motion to dismiss. ECF 725.

---

[7] The Court also granted in part and denied in part Heine's motions to suppress. ECF 513.

Yates bases her current, supplemental motion to dismiss primarily on the Government's March 20, 2017, production of "additional discovery obtained from the Bank," *i.e.*, the FDIC emails, which also is the basis of Heine's current motion. Yates also bases part of her current motion on the recent "discovery" by Defendants that there are additional materials seized from Walsh that have been stored by the FBI. Not only does Yates argue that the Court should exercise its supervisory powers to dismiss the Superseding Indictment, she adds, "Dismissal is not only warranted, it is required." ECF 697 at 5.

In addressing Yates's first motion to dismiss, the Court set forth the applicable standards. ECF 725 at 12-13. Regarding a court's exercise of its supervisory powers to dismiss an indictment in response to a claim of outrageous conduct by the Government that falls short of a due process violation, such a result is disfavored and appropriate only when there has been "flagrant prosecutorial misconduct." *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991) *abrogated in part by United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008); *see also United States v. Struckman*, 611 F.3d 560, 574-75 (9th Cir. 2010). In addition, to justify the exercise of the court's supervisory powers, the Government must have engaged in flagrant misconduct that caused substantial prejudice to the Defendant. *United States v. Fernandez*, 388 F.3d 1199, 1239 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005). Further, a remedy of dismissal requires that no other lesser remedial action be available. *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008).

It appears to the Court that there have been discovery-related misunderstandings on both sides. The Government appears to have misunderstood that the Bank's production of its files directly to Defendants did not include everything that FDIC previously had obtained from the Bank in 2012 (*i.e.*, the FDIC emails), excluding only attorney-client privileged materials. In

addition, Defendants appear to have misunderstood that there were additional materials seized from Walsh and stored by the FBI that were available for inspection and copying by Defendants, notwithstanding the Government's letter dated August 30, 2016., expressly informing Defendants of that fact. The Government's conduct does not even come close to being "flagrant prosecutorial misconduct." There was no intentional or even reckless misconduct by the Government. For this reason alone, Defendant Yates's Supplemental Motion to Dismiss (ECF 697) is denied.

**B. Defendant Heine's Motion to Vacate the Third Trial Management Order and Compel the Government to Provide Discovery**

Defendant Heine moves for an order: (1) vacating the Court's Third Trial Management Order (ECF 579) and removing the May 2, 2017, trial from the Court's calendar; (2) compelling the Government to identify and produce a set of the emails produced to Defendants for the first time on March 20, 2017 (*i.e.*, the FDIC emails), *with all emails previously produced to Defendants removed*; and (3) compelling the Government to identify all *Brady* or *Giglio* documents contained in the set of emails produced to Defendants for the first time on March 20, 2017. ECF 699. Defendant Yates joins this motion. ECF 710.

More information is needed to determine precisely what relief is appropriate to mitigate any prejudice to Defendants resulting from the fact that they did not receive the FDIC emails until March 20, 2017. Specifically, the Court and the parties need to know the actual quantity and specific content (and relevance) of any new information contained in the FDIC emails that was not previously directly produced by the Bank to Defendants.

During the hearing held on April 10, 2017, the Court directed the Government, Yates, and Heine, along with the Bank, to confer and attempt to develop an agreed-upon protocol to determine this information. These parties conferred during a recess and then reported to the

PAGE 15 – OPINION AND ORDER

Court that within the next several days the Bank will produce to an agreed-upon joint outside ESI vendor, Recommind, Inc. ("Recommind"), electronic copies of the Bank's earlier production to the Defendants in native format (or in .PST format, if the parties all so agree). In addition, the Government will provide to that same joint ESI vendor, Recommind, the FDIC emails (*i.e.*, the FDIC thumb drive), also in native format (or in .PST format, if the parties all so agree), less only the Bank's privileged information, as identified on the Bank's privilege log. The parties further reported that after the joint ESI vendor, Recommind, receives these databases from the Government and the Bank, that vendor will need several days to compare the two databases and report the results to all parties (*i.e*, both Defendants, the Government, and the Bank). The ESI vendor, Recommind, also shall identify and eliminate "near duplicates" and employ appropriate "email threading" as part of this work. *See generally* THE FEDERAL JUDGES GUIDE TO DISCOVERY 74-75 (Electronic Discovery Institute 2015). In addition, the reasonable fees and expenses of the parties' agreed-upon joint ESI vendor, Recommind, incurred on this project between April 10, 2017, and April 21, 2017, inclusive, shall be paid by the Government.

Further, the parties shall appear before the Court on April 21, 2017, at 10:00 a.m. to report on what has been learned by their agreed-upon joint ESI vendor relevant to this project. At that time, the Court will make an appropriate decision regarding the trial date and all other relevant deadlines. Other than what is expressly required by this Opinion and Order, the Court places no further obligations on the Government directly resulting from Defendant Heine's motions. Specifically, the Court does not compel the Government to identify all *Brady* or *Giglio* documents contained in the set of emails produced to Defendants for the first time on March 20, 2017, *i.e.*, the FDIC emails.

## CONCLUSION

Defendant Yates's Supplemental Motion to Dismiss (ECF 697) is DENIED. Defendant Heine's Motion to Vacate the Third Trial Management Order and Compel the Government to Provide Discovery (ECF 699), which Defendant Yates joins (ECF 710), is granted in part and denied in part as described in this Opinion and Order. The Government and the Bank shall promptly provide to the parties' agreed-upon joint ESI vendor, Recommind, the materials directed in this Opinion and Order. Further, the results of Recommind's analysis of these materials shall be fully and transparently shared with the Government, Defendants Heine and Yates, and the Bank. The parties also shall provide the Court with a summary of these results not later than the hearing set for April 21, 2017, at 10:00 a.m., and preferably sooner in writing, if possible, before the hearing. Finally, for the reasons stated in this Opinion and Order, the Government shall be responsible for paying all of the reasonable fees and expenses of the parties' agreed-upon joint vendor Recommind incurred in connection with this project for work performed between April 10, 2017 and April 21, 2017, inclusive.

**IT IS SO ORDERED**.

DATED this 11th day of April, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge