IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DAN HEINE** and **DIANA YATES**, <br><br> Defendants. | Case No. 3:15-cr-238-SI <br><br> **OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR RELEASE PENDING APPEAL** |

Billy J. Williams, United States Attorney, and Claire M. Fay, Michelle Holman Kerin, and Quinn P. Harrington, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the United States of America.

Jeffrey Alberts and Mark Weiner, PRYOR CASHMAN, LLP, 7 Times Square, New York, NY 10036; Caroline Harris Crowne, TONKON TORP, LLP, 1600 Pioneer Tower, 888 SW Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendant Dan Heine.

Janet Lee Hoffman, Andrew T. Weiner, Katherine Feuer, and Douglas J. Stamm, JANET HOFFMAN & ASSOCIATES, LLC, 1000 SW Broadway, Suite 1500, Portland OR 97205; Matthew J. Kalmanson, HART WAGNER, LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant Diana Yates.

**Michael H. Simon, District Judge.**

Between October 10, 2017, and November 28, 2017, a federal jury in Portland, Oregon heard testimony from 43 witnesses, received 584 exhibits admitted in evidence, and deliberated for four days. The 12-person jury then returned unanimous verdicts, finding both Defendant Dan Heine and Defendant Diana Yates guilty on the same 13 out of 19 charges. The jury found both

PAGE 1 – OPINION AND ORDER

Defendants guilty on one count of conspiracy to commit bank fraud and 12 counts of making false bank entries. The jury also found both Defendants not guilty on six counts of making false bank entries. On June 4, 2018, the Court denied Defendants' motions for judgment of acquittal or new trial. ECF 1059 (Opinion and Order on Post-Trial Motions). On June 14, 2018, the Court sentenced Defendant Heine to 24 months imprisonment on each count of conviction, to be served concurrently, plus three years of supervised release; the Court sentenced Defendant Yates to 18 months imprisonment on each count of conviction, to be served concurrently, plus three years of supervised release. ECF 1068 (Opinion and Order on Sentencing). Now pending before the Court are Defendant Heine's Motion for Bail Pending Appeal (ECF 1069) and Defendant Yates's Motion for Release Pending Appeal (ECF 1070). For the reasons explained below, both motions are denied, and Defendants are ordered to report on **October 9, 2018**, to the institutions designated by the Federal Bureau of Prisons to begin serving their respective sentences.

## BACKGROUND

In 2004, Defendant Dan Heine ("Heine") founded The Bank of Oswego (the "Bank") and became its President and Chief Executive Officer. He also served as a member of the Bank's Board of Directors ("Board"). Defendant Diana Yates ("Yates") was the Executive Vice President and Chief Financial Officer of the Bank. Yates also was the Secretary of the Board. Yates resigned from the Bank on March 22, 2012. Heine left the Bank in September 2014. On June 24, 2015, a federal grand jury indicted Heine and Yates for conduct related to their time with the Bank. As alleged in the later-issued superseding indictment, Heine and Yates were charged with one count of conspiring to commit bank fraud, in violation of 18 U.S.C. § 1349, and 18 counts of making false bank entries, in violation of 18 U.S.C. §§ 2 and 1005. As found by the jury, Heine and Yates concealed and misrepresented the true financial condition of the Bank in order to deceive the Bank's Board and regulators, including the Federal Deposit Insurance

Corporation ("FDIC"). Among other things, Heine and Yates falsely reported to the Board and the FDIC that: (1) the Bank had title to certain real property obtained by the Bank using a "straw buyer" transaction without disclosing the true nature of that transaction; (2) certain delinquent loans had been paid and should no longer be considered as delinquent or at risk; and (3) certain bank-owned real property received in foreclosure had been sold without disclosing all material terms.

Until August 2016, the Bank was a financial institution engaged in the business of personal and commercial banking and lending, headquartered in Lake Oswego, Oregon. The Bank was insured and supervised by the FDIC. On August 12, 2016, the Bank sold its loans and other assets to HomeStreet Bank ("HomeStreet"). The Bank continues to exist as a corporate entity, but has relinquished its banking charter and now operates as Oswego Resolution.

## STANDARDS

As a general matter, a person who has been convicted of a federal offense is to be incarcerated unless a court makes certain findings. *See* 18 U.S.C. § 3143(b) (2016); *United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003). In *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985), the Ninth Circuit held that under the Bail Reform Act of 1984, "a court must find the following to grant bail pending appeal":

    (1)    that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;

    (2)    that the appeal is not for purpose of delay;

    (3)    that the appeal raises a substantial question of law or fact; and

    (4)    that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in

>   reversal or an order for a new trial of all counts on which imprisonment has been imposed.[1]

*Handy*, 761 F.2d at 1283 (citations omitted). The burden is on a defendant to demonstrate eligibility for bail pending appeal. *Id*. Based on the plain text of the statute, the defendant must show the first *Handy* factor by "clear and convincing evidence." 18 U.S.C. § 3143(b)(1)(A). Because the statute does not expressly require a "clear and convincing" standard for the remaining three *Handy* factors, 18 U.S.C. § 3143(b)(1)(B), a defendant must show those factors only by a preponderance of the evidence.

Finally, for purposes of the Bail Reform statute, a "substantial question" is one that is "fairly debatable" or "fairly doubtful." This is a standard that is more demanding than merely "not frivolous." As the Ninth Circuit explained in *Handy*:

> We conclude that a "substantial question" is one that is "fairly debatable," . . . or "fairly doubtful," . . . . In short, a "substantial question" is one of more substance than would be necessary to a finding that it was not frivolous.

*Handy*, 761 F.2d at 1283 (citations and quotations marks omitted).[2]

---

[1] As amended, the Bail Reform Act now requires as to the fourth *Handy* factor that the appeal "raises a substantial question of law or fact likely to result in— (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B).

[2] Curiously, the Ninth Circuit in a footnote in *Garcia* quotes with approval the statement in *Handy* that a "substantial" issue is "of more substance than would be necessary to a finding that it was not frivolous," yet later in that same footnote states that a defendant "need not, under *Handy*, present an appeal that will likely be successful, only a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions." *Garcia*, 340 F.3d 1020 n.5. Because the Ninth Circuit, in that footnote, was focusing on a different issue, the Court does not conclude that *Garcia* intended to modify *Handy's* conclusion that a substantial issue is of more substance than a non-frivolous issue.

# DISCUSSION

## A. First *Handy* Factor: Risk of Flight or Danger

The Government agrees "that the defendants do not represent a flight risk or danger to the community." ECF 1071 at 3. The Court concludes that the first *Handy* factored is satisfied.

## B. Second *Handy* Factor: Purpose of Delay

In her motion, Defendant Yates expressly provides a specific argument that her appeal is not for purposes of delay. ECF 1070 at 9. Defendant Heine does not explicitly make this assertion, but arguably does so impliedly. More significantly, the Government does not argue that either Defendant fails to meet the second *Handy* factor. The Court concludes that the second *Handy* factor is satisfied.

## C. Third *Handy* Factor: Substantial Question of Law or Fact ("Fairly Debatable")

In his motion, Heine presents nine separate questions for appeal that he contends raise substantial questions of law or fact, in the sense that they are "fairly debatable." In her motion, Yates joins in four of Heine's arguments and raises one further argument. ECF 1070 at 9. The Court will discuss each argument in turn. As explained below, the Court agrees that one of Heine's nine arguments (not joined by Yates) presents a substantial question, but concludes in Section (D) below that this specific argument will not have any effect on either Defendants' conviction or sentence. Regarding the remaining arguments presented by Heine and Yates, the Court concludes that they do not raise a substantial question of law or fact. Thus, Defendants do not satisfy the third *Handy* factor.

### 1. "Something of value" (joined by Yates)

In the Court's Opinion and Order on Post-Trial Motions (ECF 1059), the Court addressed Heine's argument that he did not take "something of value" from the Bank. ECF 1059 at 4-12. Defendants used the Bank's funds to hide bad assets, such as in the A Avenue and Coleman

transactions. Defendants also intentionally failed to provide the Bank's Board and the FDIC with accurate information regarding poorly-performing (*i.e.*, delinquent) loans and intentionally gave the Bank's Board and the FDIC materially false or misleading information about the Bank's delinquent loans. In doing so, Defendants created a risk that the Bank would be prevented from collecting debts that were due and owing to the Bank. Defendants also caused the Bank to credit the loans taken out by certain borrowers with payments that those borrowers did not make, authorize, or even know about, thereby creating a false or misleading record about the creditworthiness of those borrowers, further placing the Bank's assets at risk.

In *United States v. Ely*, 142 F.3d 1113 (9th Cir. 1997), the Ninth Circuit recognized these types of actions as a deprivation of a bank's property. The Ninth Circuit stated:

> To deprive a bank of property you do not have to move cash out of its vaults. *You deprive a bank of property if you prevent its collection of debts that are due or if you arrange for the bank to credit you with a payment you have not made*. That is what these defendants are alleged to have done, to have prevented Statebank from collecting loans and interest that were due and to have arranged for Statebank to create further credit in their favor which would pay the interest due. As § 1344 specifies, it is a crime to obtain bank credits by false pretenses.

*Ely*, 142 F.3d at 1119 (emphasis added). The Government has argued and presented substantial evidence to the jury that Defendants Heine and Yates arranged for the Bank to credit certain borrowers with payments that those borrowers did not make, authorize, or even know about, thereby placing the Bank at greater risk of being unable to collect debts owed to the Bank by those borrowers. The Government also argued and presented substantial evidence to the jury that Defendants caused the Bank to use its own assets to fund a transaction involving a "straw buyer," who took title to the A Avenue property in that straw buyer's own name, further placing the Bank's funds at risk. These arrangements and false information provided by Defendants are

more than sufficient evidence of depriving (or, at least, attempting to deprive) the Bank of something of value.

Further, another criminal statute, 18 U.S.C. § 641, prohibits a person from, among other things, knowingly converting to his use or without authority disposing of any "record, voucher, money, or *thing of value* of the United States" (emphasis added). In a thorough discussion, the Second Circuit explained that the phrase "thing of value" includes not only tangible property but "information" as well. The Second Circuit stated:

> Appellants contend that the statute covers only tangible property or documents and therefore is not violated by the sale of information. This contention was rejected by District Judge Daly in a well-reasoned opinion reported at 446 F.Supp. 890. We agree with the District Judge's decision and can do little more than harrow the ground he has already plowed.
>
> Like the District Judge, we are impressed by Congress' repeated use of the phrase "thing of value" in section 641 and its predecessors. ***These words are found in so many criminal statutes throughout the United States that they have in a sense become words of art. The word "thing" notwithstanding, the phrase is generally construed to cover intangibles as well as tangibles***. For example, amusement is held to be a thing of value under gambling statutes. *Giomi v. Chase*, 47 N.M. 22, 25-26, 132 P.2d 715, 716-17 (1942); *Hightower v. State*, 156 S.W.2d 327, 328 (Tex.Civ.App.1942); *State v. Baitler*, 131 Me. 285, 287, 161 A. 671, 672 (1932). Sexual intercourse, or the promise of sexual intercourse, is a thing of value under a bribery statute. *McDonald v. State*, 57 Ala.App. 529, 329 So.2d 583, 587-88 (1975), *cert. denied*, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976); *Scott v. State*, 107 Ohio St. 475, 485-87, 141 N.E. 19, 22-23 (1923). So also are a promise to reinstate an employee, *People ex rel. Dickinson v. Van De Carr*, 87 App.Div. 386, 389-90, 84 N.Y.S. 461, 463-64 (1st Dep't 1963), and an agreement not to run in a primary election, *People v. Hochberg*, 62 A.D.2d 239, 246-47, 404 N.Y.S.2d 161, 167 (3d Dep't 1978). The testimony of a witness is a thing of value under 18 U.S.C. § 876, which prohibits threats made through the mails with the intent to extort money or any other "thing of value." *United States v. Zouras*, 497 F.2d 1115, 1121 (7th Cir. 1974).

> ***Although the content of a writing is an intangible, it is nonetheless a thing of value***. The existence of a property in the contents of unpublished writings was judicially recognized long before the advent of copyright laws. *Mazer v. Stein*, 347 U.S. 201, 214-15, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Wheaton v. Peters*, 8 Pet. 591, 657, 33 U.S. 591, 657, 8 L.Ed. 1055 (1834); *Press Pub. Co. v. Monroe*, 73 F. 196, 199 (2d Cir.), appeal dismissed, 164 U.S. 105, 17 S.Ct. 40, 41 L.Ed. 367 (1896). This property was "not distinguishable from any other personal property" and was "protected by the same process, and (had) the benefit of all the remedies accorded to other property so far as applicable." *Palmer v. De Witt*, 47 N.Y. 532, 538 (1872). Although we are not concerned here with the laws of copyright, we are satisfied, nonetheless, that the Government has a property interest in certain of its private records which it may protect by statute as a thing of value. It has done this by the enactment of section 641. *See United States v. Friedman*, 445 F.2d 1076, 1087 (9th Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971) (transcript of grand jury proceedings). Section 641 is not simply a statutory codification of the common law of larceny. *See Morissette v. United States*, 342 U.S. 246, 269 n.28, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Indeed, theft is not a requisite element of the proscribed statutory offense, which is based upon unauthorized sale or conversion. *United States v. Sher*, 418 F.2d 914, 915 (9th Cir. 1969). If, as the Court said in *Morissette*, *supra*, conversion is the "misuse or abuse of property" or its use "in an unauthorized manner", the defendants herein could properly be found to have converted DEA's computerized records.

*United States v. Girard*, 601 F.2d 69, 70-71 (2d Cir. 1979) (emphasis added); *see also See, e.g.*, *United States v. Fowler*, 932 F.2d 306 (4th Cir.1991) (holding that governmental information is a "think of value" under 18 U.S.C. § 641).

Finally, as the United States Supreme Court noted in its unanimous decision in a case involving the same bank fraud statute that is at issue here, 18 U.S.C. § 1344(1): "We have found no case from this Court interpreting the bank fraud statute as requiring that the victim bank ultimately suffer financial harm, or that the defendant intend that the victim bank suffer such harm." *United States v. Shaw*, 137 S.Ct. 462, 467 (2016). For all of these reasons, Defendants fail to present a substantial question on their point relating to "something of value."

### 2. Heine's expert testimony regarding no loss to the Bank (joined by Yates)

In the Court's Opinion and Order on Post-Trial Motions (ECF 1059), the Court addressed Heine's argument that the Court precluded Heine from introducing evidence in his case-in-chief regarding the overall financial impact of the various transactions at issue. ECF 1059 at 32-33. Defendants fail to present a substantial question on this point.

### 3. Steve Andrew's testimony

In the Court's Opinion and Order on Post-Trial Motions (ECF 1059), the Court addressed Heine's argument that the Court improperly allowed certain testimony from trial witness Steve Andrews. ECF 1059 at 29-30. Defendants fail to present a substantial question on this point.

### 4. Prosecution's closing argument (joined by Yates)

In the Court's Opinion and Order on Post-Trial Motions (ECF 1059), the Court addressed Heine's argument that the Government misstated facts or law in its closing argument. ECF 1059 at 12-29. Defendants fail to present a substantial question on this point.

### 5. Denial of motion to suppress Heine's FDIC deposition

In the Court's Opinion and Order on Defendant Heine's Motion to Suppress (ECF 513), the Court addressed Heine's argument that his deposition given to the FDIC as part of its civil investigation should have been suppressed. ECF 513 at 7-15 and 20-35. Defendant Heine fails to present a substantial question on this point.

### 6. Court's jury instruction on deliberate ignorance

The Court instructed the jury as follows:

> You may find that a defendant acted knowingly with regard to a representation if you find beyond a reasonable doubt that the defendant:
>
> (1) was aware of a high probability that a representation was false or misleading; and

>     (2) that defendant deliberately avoided learning the truth.
>
> You may not find such knowledge, however, if you find that the defendant actually believed that the statement at issue was true or if you find that the defendant was simply careless.

ECF 999 (Final Jury Instructions) at Instr. No. 34.

A deliberate ignorance instruction is appropriate when a jury rationally could find both that a defendant had a subjective belief that there is a high probability a fact exists and deliberate actions taken to avoid learning the truth. *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013). Moreover, in deciding whether to give such an instruction, "the district court must view the evidence in the light most favorable to the party requesting it." *Id*. Viewed in the light most favorable to the Government, substantial evidence, including but not limited to the trial testimony of Brandy Comer, Geoffrey Walsh, and Chris Dudley, was presented to the jury to support the Court's decision to give this instruction. Defendants fail to present a substantial question on this point.

### 7. Whether Defendants' statements were false (joined by Yates)

Heine and Yates argue that the call reports were not literally false because the delinquent loans that were not disclosed on the call reports had been brought current and thus were not actually "delinquent," even if one of the conspirators (Geoffrey Walsh with regard to several of the delinquent loans or Diana Yates with regard to the Dudley loan) caused those payments to be made and even if the Bank's borrowers had no knowledge that those payments or credits had been made on their behalf. In the Court's Opinion and Order on Post-Trial Motions (ECF 1059), the Court addressed a similar argument made by Yates regarding three counts of conviction. ECF 1059 at 33-35. Substantial evidence was presented to the jury that the statements on the call reports were intentionally false, misleading, and deceptive and that material information was

>     (2) that defendant deliberately avoided learning the truth.
>
> You may not find such knowledge, however, if you find that the defendant actually believed that the statement at issue was true or if you find that the defendant was simply careless.

ECF 999 (Final Jury Instructions) at Instr. No. 34.

A deliberate ignorance instruction is appropriate when a jury rationally could find both that a defendant had a subjective belief that there is a high probability a fact exists and deliberate actions taken to avoid learning the truth. *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013). Moreover, in deciding whether to give such an instruction, "the district court must view the evidence in the light most favorable to the party requesting it." *Id*. Viewed in the light most favorable to the Government, substantial evidence, including but not limited to the trial testimony of Brandy Comer, Geoffrey Walsh, and Chris Dudley, was presented to the jury to support the Court's decision to give this instruction. Defendants fail to present a substantial question on this point.

### 7. Whether Defendants' statements were false (joined by Yates)

Heine and Yates argue that the call reports were not literally false because the delinquent loans that were not disclosed on the call reports had been brought current and thus were not actually "delinquent," even if one of the conspirators (Geoffrey Walsh with regard to several of the delinquent loans or Diana Yates with regard to the Dudley loan) caused those payments to be made and even if the Bank's borrowers had no knowledge that those payments or credits had been made on their behalf. In the Court's Opinion and Order on Post-Trial Motions (ECF 1059), the Court addressed a similar argument made by Yates regarding three counts of conviction. ECF 1059 at 33-35. Substantial evidence was presented to the jury that the statements on the call reports were intentionally false, misleading, and deceptive and that material information was

omitted. Further, substantial evidence was presented to the jury that these false, misleading, and deceptive statements were made to the Bank's Board and to the FDIC to prevent the Board and the FDIC from making certain discretionary decisions needed properly to manage and oversee the Bank and its risks.

In addition, the Court instructed the jury regarding the elements of a "False Bank Entry" as follows:

> An entry in the books or records of a bank is false if it is intentionally made to represent what is not true or does not exist. For purposes of this crime, an entry can be false if it omits, or leaves out, material information necessary to make what is stated or included in that entry not misleading or deceptive.

ECF 999 (Final Jury Instructions) at Instr. No. 30. As the Ninth Circuit explained in *Ely* regarding false bank entries in the books and records of a bank:

> Every circuit to interpret either 18 U.S.C. § 1005 or § 1006 (an analogous statute applying to non-bank financial institutions) has determined that *material omissions are false statements for the purposes of the statutes*. *United States v. Cordell*, 912 F.2d 769 (5th Cir.1990); *United States v. Chandler*, 910 F.2d 521 (8th Cir.1990); *United States v. Rochester*, 898 F.2d 971 (5th Cir.1990); *United States v. Krepps*, 605 F.2d 101, 109 (3d Cir.1979) *United States v. Spector*, 326 F.2d 345 (7th Cir.1963).
>
> *Plainly, a statement may be false if a vital fact is omitted*.

*Ely*, 142 F.3d at 1119 (emphasis added). Defendants fail to present a substantial question on this point.

**8. Heine's speedy trial rights**

In the Court's Opinion and Order on Motions *in Limine*, Motions to Dismiss, and Other Pretrial Objections and Matters (ECF 926), the Court addressed Heine's renewed arguments regarding his speedy trial rights. ECF 926 at 43-48. Defendant Heine fails to present a substantial question on this point

### 9. Calculation of sentencing guidelines using salary as "gain"

The most contested portion of the Court's calculation of the advisory sentencing guidelines range concerned the "loss enhancement" applicable to each Defendant. In the Court's Opinion and Order on Sentencing (ECF 1068), the Court addressed this issue. ECF 1068 at 8-13. Because the loss enhancement resulted in a substantial increase in the offense levels for each Defendant, the Court applied a "clear and convincing" standard. *Id*. at 13. For Defendant Heine, the Court applied a 14-level loss enhancement based on Heine's salary and benefits received during the relevant time period; for Defendant Yates, the Court applied a 12-level loss enhancement based on Yates's salary and benefits received during the relevant time period. *Id*. *See United States v. Shabudin*, 701 F. App'x 599, 601 (9th Cir. 2017) (approving use of defendant's salary to measure "gain" when district court concludes that defendant would not have received that salary "but for" the unlawful conduct).

The Court believes that it correctly considered Defendants' salary and benefits as a proxy for "gain," which itself is a proxy for "loss," for purposes of calculating the advisory sentencing guidelines ranges. Nevertheless, the Court also believes that this is an area in which reasonable jurists may differ. Thus, for this particular argument, it is necessary to consider the fourth *Handy* factor. As discussed in Section (D) below, Defendants do not satisfy the fourth *Handy* factor on this point.

### 10. Admission of Trial Exhibit 471 (the "Bond Claim" argument by Yates only)

In the Court's Opinion and Order on Post-Trial Motions (ECF 1059), the Court addressed Yates's argument that the Court erred in receiving Trial Ex. 471 in the absence of severance. ECF 1059 at 41. Regarding Yates's additional argument that admission of this trial exhibit violated either Rule 403 or Rule 404 of the Federal Rules of Evidence, the Court sufficiently addressed that issue at trial. All references to Yates were redacted from this exhibit before it was

received in evidence, and the jury was instructed that this exhibit could only be considered as evidence against Defendant Heine. Thus, as against Defendant Yates, Trial Exhibit 471 did not present any improper "character evidence" or any other unduly prejudicial evidence. Defendant Yates fails to present a substantial question on this point.

**D. Fourth *Handy* Factor: Effect on Conviction or Sentence**

In a motion for release pending appeal, if a defendant satisfies the first three *Handy* factors, the court must then decide whether appellate resolution of the substantial question identified is likely to result in any of the following: reversal; an order for new trial; a sentence that does not include a term of imprisonment; or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B). As discussed above in Section (C), the only substantial question raised by either Defendant is whether the Court correctly calculated the advisory sentencing guidelines by using the Defendants' salaries and benefits received during the relevant time periods as a proxy for "gain," which itself is a proxy for "loss." Although Defendant Yates did not expressly adopt Heine's argument on this point as her own, *see* ECF 1070 at 9, because the analysis is the same for each, the Court, in fairness, will treat Heine's argument also as made by Yates.

If the Court erred in calculating the advisory sentencing guidelines by considering either Heine's or Yates's salaries and benefits as part of their "loss calculation" enhancement, such an error would only affect sentencing. It would not result in either a reversal or a new trial. Thus, the Court will only address whether such an error, if there is one, would likely result in a sentence that does not include a term of imprisonment or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. (Neither Defendant has served any part of his or her term of imprisonment.)

In determining the applicable advisory sentencing guidelines ranges for each Defendant, the Court found a total offense level for Heine of 31, yielding an advisory guidelines range of 108-135 months, given a criminal history category of I. ECF 1068 at 19 (Opinion and Order on Sentencing). The Court also found a total offense level for Yates of 29, yielding an advisory guidelines range of 87-108 months, given a criminal history category of I. *Id*. The Court also noted "that if no offense level enhancement for loss (or gain) were applied, then each Defendant would have an adjusted offense level of 17. In that circumstance, each Defendant would have an advisory sentencing guideline range of 24-30 months." *Id*.[3]

After calculating the advisory sentencing guidelines ranges for each Defendant, the Court considered the factors set forth in § 3553(a). *Id*. at 19-21. After considering all relevant factors, evidence, and arguments, the Court imposed a sentence of 24 months imprisonment for Defendant Heine and a sentence of 18 months imprisonment for Defendant Yates. *Id*. at 21. The Court concluded its Opinion and Order on Sentencing with the following comment: "The Court further notes that the Court would still impose these sentences even if the guideline adjustment for loss was not included in Defendants' sentencing guideline calculations." *Id*. Even if Defendants were to prevail on their loss calculation guidelines argument (*i.e.*, using Defendants' salaries as "gain"), both Defendants would still receive the same sentence that they received. For Defendant Heine, that sentence would be at the low end of his revised advisory guidelines range, and for Defendant Yates

---

[3] At the hearing on Defendants' motions for release pending appeal, the Government observed that if no offense level enhancement for loss (or gain) would have applied, then each Defendant would have had an adjusted offense level of 28, rather than 17, based on USSG § 2B1.1(b)(16)(D), given that Defendants' conduct substantially jeopardized the safety and soundness of a financial institution. The Government may be correct on this point. That, however, would have only *increased* Defendants' advisory sentencing guidelines range, not *decreased* it. Thus, even if the Government is correct on this guidelines issue, Defendants still would not have satisfied the fourth *Handy* factor.

that sentence would be six months below the low end of her revised advisory guidelines range. Thus, Defendants do not satisfy the fourth *Handy* factor on this point.

## CONCLUSION

Defendant Heine's Motion for Bail Pending Appeal (ECF 1069) and Defendant Yates's Motion for Release Pending Appeal (ECF 1070) are DENIED. Both Defendants are ordered to report on **October 9, 2018**, to the institutions designated by the Federal Bureau of Prisons to begin serving their respective sentences.

**IT IS SO ORDERED**.

DATED this 7th day of August, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge